HERCULES POWDER COMPANY, PROSECUTOR, v. DORIS NIERATKO, ADMINISTRATRIX AD PROSEQUENDUM OF MARTIN NIERATKO, DECEASED, RESPONDENT.

Submitted October 13, 1933—Decided July 12, 1934.

196

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For the prosecutor, *R. E. & A. D. Watson.*

For the respondent, *David T. Wilentz* and *James F. Patten.*

The opinion of the court was delivered by

HEHER, J.   On February 19th, 1929, decedent, an employe of prosecutor, suffered injuries by an accident which arose out of and in the course of his employment. He died on January 28th, 1930, as a result, his administratrix claims, of the injuries so sustained. The deputy commissioner

awarded compensation to decedent's dependents, computed as prescribed by the statute. He also made an award for disability suffered by decedent. The judgment so rendered was affirmed in the Middlesex Common Pleas. This *certiorari* brings up the latter judgment.

The first insistence of prosecutor is that it did not have actual knowledge of the occurrence of the claimed injury, or notice thereof, within the time required by paragraph 15 of section 2 of the Workmen's Compensation act (*Pamph. L.* 1911, *pp.* 134, 140), and that, therefore, no recovery of compensation can be had under the act.

This claim is not well founded. Concededly, decedent, on the day mentioned, suffered an injury which entitled him to compensation under the provisions of the act referred to. He sustained a hernia. He continued to "report for work almost daily" until March 6th, 1929. Apparently, at this time, he became incapacitated, and made claim for compensation. There was an informal hearing in the compensation bureau, and prosecutor agreed to pay decedent compensation for a period of twenty weeks from March 6th, 1929. Compensation was paid for this period, with the exception of the last four weeks, which decedent declined to accept. On October 5th, 1929, a petition for compensation was filed with the compensation bureau, in decedent's behalf, in which it was claimed that he suffered his injuries as a result of the falling of a barrel. The petition alleged that, while he was engaged in lifting the barrel, "it fell, striking him and knocking him unconscious, causing hernia," and that there ensued "permanent disability consisting of brain injury, causing insanity."

Prosecutor maintains that, while it had notice of the accident on the day of its occurrence, its "knowledge was limited to an accident resulting in a claim for hernia, and not one causing insanity." But there was testimony, which we regard as entirely credible, that decedent's widow, in the month of April, 1929, informed prosecutor's safety employment supervisor, who delivered the compensation checks and was apparently in charge of the matter for his employer, and

also the company's general superintendent, that symptoms of brain trouble had been observed. She said that she conveyed this information to prosecutor's agents as soon as one of decedent's physicians informed her of the existence of this condition. This was a timely notice. Paragraph 15 of section 2 of the act provides that if the notice is given, or the knowledge obtained, within ninety days after the occurrence of the injury, and the employe, or other beneficiary, shall show that his failure to give prior notice was due to his mistake, inadvertence, ignorance of fact or law, or inability, or to the fraud, misrepresentation or deceit of another person, or to any other reasonable cause or excuse, compensation may be allowed, unless, and then to the extent only that, the employer shall show that he was prejudiced by failure to receive such notice. Paragraph 16 provides for the service of a written notice, in substantially the form therein prescribed. As to injury, it requires notice only that the employe sustained a "personal injury," without specification thereof.

It is evident, therefore, that the requirements of the statute were substantially met. Actual knowledge of the occurrence of injury is the equivalent of notice thereof. Prosecutor concedes that it had notice, or actual knowledge, within the time limited by the statute, of the happening of the accident, and of the hernia suffered by decedent in consequence thereof, but it insists that in respect of the alleged head injury, and the consequences thereof, the statutory prerequisite of notice or actual knowledge did not exist. But this is manifestly not the case. In the first place, the statute requires notice only that the employe has sustained a "personal injury," without a particularization. The statutory conception of the injury that is the subject of notice is generic rather than specific. As to the nature and extent of the injury no specification is required. The injured employe is required, if so requested by the employer, to submit immediately to an examination by a physician selected by the employer, and to such further examinations as may be reasonable under the circumstances. Paragraph 17. Secondly, the prosecutor derived actual knowledge of the alleged additional injury from

the information conveyed to its agents by decedent's widow. "First-hand personal knowledge" is not required. The statute is satisfied if the employer is in possession of what is called "knowledge in common parlance, such knowledge as most of us are confined to in the daily affairs of life." And a corporate body, as a legal entity, cannot itself have knowledge. If it can be said to have knowledge at all, that must be the imputed knowledge of some corporate agent. Knowledge of the proper corporate agent must be regarded as, in legal effect, the knowledge of the corporation. *Allen* v. *City of Millville,* 87 *N. J. L.* 356; *affirmed,* 88 *Id.* 693. It would seem, therefore, that the provision of paragraph 16 of the act, that notice *in writing* shall be served upon the employer, is merely directory. Any notice, verbal or written, which conveys to the employer knowledge of the fact that the employe has received an injury by an accident which arose out of and in the course of his employment, is sufficient. The purpose of the notice is to give the employer the benefit of a timely investigation of the circumstances attending the alleged accident.

It can hardly be gainsaid that the prosecutor in the instant case, through its mentioned agents, acquired knowledge that decedent suffered from the additional injury, and that it was claimed that this resulted from the accident in question. And it is clear that the failure to make an earlier disclosure was due to ignorance of fact, and was therefore reasonably excused. There is no showing that prejudice thereby resulted to the employer.

We are not called upon to determine when the time begins to run where the employe is not conscious of the injury, or a resultant injury does not develop, until the expiration of the statutory period for the giving of notice. See *Huslus' Case,* 123 *Me.* 428; 123 *Atl. Rep.* 514; *In re Brown,* 228 *Mass.* 31; 116 *N. E. Rep.* 897; *Hines* v. *Norwalk Lock Co.,* 100 *Conn.* 533; 124 *Atl. Rep.* 17. In the last cited case, Chief Justice Wheeler, speaking for the Supreme Court of Errors of Connecticut, in construing a statute that, like our own, provided for notice to the employer of an "injury" sustained, held that the statute contemplated an injury re-

sulting in incapacity, and that, consequently, notice is required when incapacity results, and not forthwith upon the occurrence of the accident which caused the injury. An injury that does not produce disability is not compensable under our statute. *Sigley* v. *Marathan Razor Blade Co.,* 111 *N. J. L.* 25. There is a clear distinction between the terms "injury" and "accident," and the legislature undoubtedly had it in mind in giving expression to its purpose. The petition for compensation must be filed within two years after the date on which the *accident* occurred, unless there has been an agreement for compensation, or part payment of compensation has been made. *Pamph. L.* 1931, *pp.* 704, 707, 708. Compare *Cristo* v. *Standard Oil Co.,* 98 *N. J. L.* 871. The earlier statute, which governs here, was couched in the same language. *Pamph. L.* 1919, *pp.* 201, 214.

The next point made by prosecutor is that respondent's petition, presented on behalf of decedent's dependents, was not filed within the time limited by the statute, and that, therefore, there can be no award to decedent's dependents by reason of his death.

We find this contention to be likewise devoid of merit. As a result of the informal hearing, prosecutor agreed to pay compensation, for the disability occasioned by the hernia, for a period of twenty weeks. The last payment matured on July 24th, 1929. Compensation for the final four weeks of the period fixed by the agreement remains unpaid. The employer tendered payment, but it was refused. On October 5th, 1929, there was filed, on behalf of decedent, a petition for compensation, alleging that, in addition to the hernia, he suffered a brain injury which resulted in insanity. On January 28th, 1930, while this proceeding was pending, the petitioner died, and on July 9th, 1930, his widow, on behalf of the dependents, presented the petition herein, wherein she alleged, *inter alia,* that, by reason of the accident which befell decedent, he suffered "mental injury and paralysis which resulted in his death." The petition in this proceeding was therefore presented within the time prescribed by section 3, paragraph 23 (h) of the Workmen's Compensation act, as amended by chapter 93 of the laws of 1919 (*Pamph. L.* 1919,

*pp.* 201, 214), providing, *inter alia,* that "in case a part of the compensation has been paid by" the employer, where personal injury or death is suffered by an employe, the petition for compensation shall be filed "within one year after the last payment of compensation," or, in default thereof, "all claims for compensation on account" of such "personal injury or death * * * shall be forever barred." In a case presenting a somewhat similar situation, where the employe died more than a year after payments for temporary disability had ceased, our court of the last resort construed this statutory provision to permit the presentation of a claim for compensation by the dependents "within one year after the date of the last payment of compensation," and the clause relating to the payment of "a part of the compensation" was construed to mean "part of the compensation which *ought* to be paid." *Lusczy* v. *Seaboard By-Products Co.,* 101 *N. J. L.* 170. The petition herein was filed within one year after the last payment of compensation, and the claim is therefore not barred. It matters not that decedent did not accept the payment tendered. The tender here was the equivalent of payment in the statutory sense.

Lastly, it is urged that the evidence does not establish petitioner's claim that decedent sustained a head injury, and in consequence thereof suffered death.

Our conclusion is to the contrary. Unquestionably, disease had made inroads upon decedent's health when this alleged accident occurred. But it is likewise undeniable that an accident befell him, and that he suffered injury in consequence thereof. The circumstances clearly point to an accidental injury. The employer was not then, or thereafter, disposed to question the claim that the hernia was a consequent of the accident. It is insisted, however, that decedent did not suffer the head injury claimed, and that, in any event, his death was due to natural causes, and not as the result of injuries consequent upon the accident. The weight of the evidence seems to be with respondent. While there was credible testimony that, at the time of the accident, decedent suffered from general arteriosclerosis "with high blood pressure and some slight kidney changes," there were indis-

putable marked physical and mental changes immediately following the accident. His physician testified that death resulted from "degenerative changes in the brain * * * following in my opinion an injury to the brain sustained at the time he fell * * * or was knocked down." However, it is vigorously argued by prosecutor that the physician's opinion was based upon decedent's statement to him that, in the accident, his head struck "something hard and * * * he remembered no more until he came to * * * in their little hospital;" that the declaration of decedent as to the cause of his injury is inadmissible (*Helminsky* v. *Ford Motor Co.*, 111 *N. J. L.* 369), and, therefore, does not afford a basis for the opinion thus expressed by the physician; and that there is no other competent evidence tending to show that decedent suffered in the accident a head injury which resulted in his death. But such is not the case. It is reasonably inferable from the established facts that decedent fell as a result of the accident. The hernia itself could have been the producing cause of a fall, with a consequent head injury such as would be manifested by the symptoms found in the instant case. Moreover, there was testimony of unmistakable symptoms of brain trauma. One of the physicians testified that there was no "doubt in this world that that man had a concussion of the brain. He had the classical symptoms." And there was evidence, which we deem to be credible, that until the day of the accident decedent was in comparatively good health, and that immediately thereafter, as indicated above, physical and mental decline set in. Upon his return home, following the accident, his face was swollen, and he was in a confused state of mind. He could not speak for several days, nor could he write. There was testimony from fellow-employes that he was in a bewildered and dazed condition immediately following the accident, and that he "complained of pain and an injury," pointing to an inguinal hernia. His actions, as related by members of his family, unquestionably point to a head injury.

There was progressive physical and mental deterioration which culminated in death. Another physician testified that, when he examined decedent on January 11th, 1930, he found

"some definite evidence of traumatic conditions," and that while it was possible that the condition then found, which eventually resulted in death, was the result of a non-traumatic cause, that was not probable. Furthermore, he said there were multiple hemorrhages of the brain, and that this condition is "commonly seen in certain types of bases following head injury," and that while arteriosclerosis, high blood pressure and "a kidney condition" may bring on multiple brain hemorrhages "they are more of a different type altogether." He found other symptoms of a head injury, *i. e.,* "optic neuritis, ocular symptoms, inability to control the eyes, speech disturbance, disturbance of co-ordination and of limitation." There was significance, too, in the rapid progress of the brain condition immediately following the accident. Moreover, there is ample basis in the proofs for the conclusion that the accident thus suffered by decedent materially aggravated and accelerated the progress of the pre-existing disease, and thereby produced disability and hastened death. Compare *Hahn* v. *Delaware, Lackawanna and Western Railroad Co.,* 92 *N. J. L.* 277; *affirmed,* 93 *Id.* 463.

The evidence, therefore, furnishes a basis of rational inference, tantamount to legal proof of the fact, that decedent's death, and the disability which preceded it, resulted from an accident which arose out of and in the course of his employment. *Manziano* v. *Public Service Gas Co.,* 92 *N. J. L.* 322. This is fairly inferable from all the facts and circumstances, and we so find. In civil cases it is sufficient if the circumstantial evidence be such as to afford a fair and reasonable presumption of the facts inferred. Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil causes, is a mere preponderance of probabilities. All that is required is that the claimed conclusion from the offered fact must be a probable or a more probable hypothesis, with reference to the possibility of other hypotheses. The test is probability rather than certainty. *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487.

Judgment affirmed.