DUDLEY· L. HALL, RESPONDENT, v. BESSIE W. DOREMUS, WARD J. DOREMUS AND MUNSON G. DOREMUS, PROS-ECUTORS.

Submitted May 11, 1934—Decided November 23, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutor, *Arthur F. Mead.*

For the respondent, *McCarter & English.*

The opinion of the court was delivered by

HEHER, J.   The primary question here presented is whether respondent, while in the employ of prosecutors, suffered injury by an accident which arose out of and in the course of his employment, within the intendment of paragraph 7 of section 2 of the Workmen's Compensation act. *Pamph. L.* 1911, *pp.* 134, 136.

The essential facts follow: Respondent was employed as a laborer on a farm maintained by prosecutors at Towaco, in the county of Morris. His duties were general in character—such as are ordinarily rendered by farm laborers. On the day in question, July 1st, 1933, at seven-thirty A. M., he entered the barn upon his employers' premises to assist in unloading a wagon containing hay, and found a cow in parturition. It was an abnormal presentation. The malpresentation consisted of a breech—the hindquarters emerging first. The calf was unusually large, and was the cow's first born. A natural delivery being impossible, those in attendance resorted to the familiar principle of operative interference by the obstetric forceps, *i. e.,* delivery accomplished by substituting for nature's process, or thereby supplementing it, muscular power exerted through a rope attached to the hind legs of the calf. The result was a terrifying ordeal—especially for respondent, who was unprepared by a like prior experience. Overwhelming fear and consternation apparently seized him. The agonizing groans and the gory spectacle produced a shock to his nerves and senses of such severity as to paralyze his faculties. In the resultant state of unconsciousness, he fell to the concrete floor, and thereby suffered a skull fracture with consequent disability. His co-laborer, Mabie, seek-

ing escape, staggered from the barn, and fell unconscious on a grass plot outside. Respondent described the scene as a "terrible sight." The delivery was accompanied by "terrific agony and moaning." There was an award in the compensation bureau of compensation for temporary and permanent partial disability, and the writ brings up these proceedings.

The statute provides that, in event that the employer and employe shall by agreement, either express or implied, accept the provisions of section 2 thereof, "compensation for *personal injuries* to or for the death of such employe by accident arising out of and in the course of his employment shall be made by the employer without regard to the negligence of the employer," according to the schedule therein contained, with two exceptions, neither of which is here involved. *Pamph. L. 1911, pp. 134, 136.*

An "accident," within the purview of the act, is an unlooked-for mishap or untoward event which is not expected or designed. It arises out of and in the course of the employment if it results from a risk reasonably incident to the employment. The words "out of" refer to the origin and cause of the accident; the words "in the course of" to the time, place and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident; the latter relate to the circumstances under which an accident of that character or quality occurs. The words "out of" connote an accident that is in some sense due to the employment—an accident resulting from a risk reasonably incident to the employment. The legislative purpose was to provide for the risks of accident which are within the scope of the employment in which the workman is engaged. An accident happening while an employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be at that time, occurs "in the course of" the employment. An accident arises "out of" the employment when the risk of such an occurrence might reasonably be regarded as incidental to the employment. A risk is incidental to the employment when it belongs to or is connected

with what a workman has to do in fulfilling his contract of service. And a risk may be incidental to the employment when it is either an ordinary risk, directly connected therewith, or one extraordinary in character, indirectly connected with the employment because of its special nature. *Hulley* v. *Moosbrugger*, 88 *N. J. L.* 161; *Bryant, Adm'x,* v. *Fissell,* 84 *Id.* 72.

There must be a causal connection between the accident and the employment, or the former cannot be said to have arisen out of the latter. If the danger were one to which the employe was exposed because of the nature of his employment, the accident arose out of the employment. An accident arises "out of" the employment when there is a causal connection between the conditions under which the work is required to be done and the resulting injury. Unless the employment is a contributing proximate cause, an injury sustained in the course of the employment is not compensable. It must be traceable to a hazard of the employment. "It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *In re McNicol,* 215 *Mass.* 497; 102 *N. E. Rep.* 697. The injury must, *ex necessitate,* be the result of the employment, and flow from it as the inducing proximate cause. *In re Madden,* 222 *Mass.* 487; 111 *N. E. Rep.* 379.

And it would seem that, on principle, even though the accident resulted from the doing in an emergency of something that is not strictly within the scope of the employment, it may nevertheless be one that arises out of and in the course of the employment. Compare *Yates* v. *South Kirkby Featherstone and Hemsworth Collieries, Ltd.* (1910), 2 *K. B.* 538; 3 *N. C. C. A.* 225; 3 *B. W. C. C.* 418.

It is not essential that there be a physical injury. The statute imposes no such requirement. The clearly expressed legislative policy is to provide compensation when disability results from "personal injuries" suffered by accident arising out of and in the course of the service required by the con-

tract of employment. The direct injury suffered by respondent consisted of mental, emotional and nervous shock. This is just as much a "personal injury" as if a falling timber from the upper portion of the structure, in which he was rendering the service at which he was employed, had inflicted physical injury. The two cases are indistinguishable in principle. Our court of the last resort has held that whether a neurosis be of functional origin, or has an organic or structural basis, if it results from injury arising out of and in the course of the employment, and produces disability, it is compensable. Neurosis, standing alone, is classified as a compensable injury if disability ensues. The part of the human body that has been made incapable of its normal function and use, as the result of an accident, is "injured" in the statutory sense. If there be bodily injury combined with a neurosis, or the neurosis supervenes upon the physical ailment, the consequent disability is compensable. *Sigley* v. *Marathon Razor Blade Co.*, 111 *N. J. L.* 25.

By parity of reasoning, a neurosis that is the direct result of an accident, without an intervenient physical injury, is a "personal injury" in the fair sense of the term. An electric shock is a comparable injury. The external circumstances may be such as to produce fright or shock, as in the case of an electric shock, but it may be an injury arising out of the employment nevertheless. It is such an injury if it is the result of exposure occasioned by the employment. And there is an analogy between this and the case of an occupant of a railroad train who suffers nervous shock, without physical injury, as a result of the wrecking of the train. Manifestly, this is no less a personal injury, except in character and degree of physiological impairment, than the loss of a leg or other member of the physical body. While it seems to be the rule in this state that where physical injury supervenes upon mere fright, suffered as the result of a negligent act, the injury is not actionable, such doctrine rests upon the principle that a person is legally responsible only for the natural and proximate results of his *negligent act,* and that physical suffering is not the probable or natural consequence

of fright, in the case of a person of ordinary physical and mental vigor. *Ward* v. *West Jersey and Seashore Railroad Co., 65 N. J. L.* 383. There Chief Justice Gummere said: "And in the general conduct of business, and the ordinary affairs of life, although we are bound to anticipate and guard against consequences which may be injurious to persons who are liable to be affected thereby, we have a right, in doing so, to assume, in the absence of knowledge to the contrary, that such persons are of average strength both of body and of mind." But the cause of action here is not predicated upon the violation of a duty that is denominated negligence. The statute grants compensation for *personal injuries* suffered by accident arising out of and in the course of the employment, if disability results. It is the consequences of disability that it seeks to alleviate. It was designed to effect a measure of economic security for the workman so injured, or his dependents in the event that death ensues, and to place the burden thereof upon industry. It does not appear that the accident which befell respondent was due to emotional instability. There is no evidence tending to show that he was subnormal in physical resistence to emotional distress. His immediate associate was likewise affected, and another co-laborer testified that he was prepared by experience to withstand the shock. Even so, it would not defeat recovery. The existence of predisposing factors does not operate to deprive the employe of the benefits conferred by the act, if the accident were a proximate contributing cause of the condition resulting in disability. The statutory protection is not limited to employes of sound health. The right to compensation is not determined by the employe's previous condition of health. *Sigley* v. *Marathon Razor Blade Co., supra, Hercules Powder Co.* v. *Nieratko, 113 N. J. L.* 195; 173 *Atl. Rep.* 606; *In re Madden, supra; Clover, Clayton & Co., Ltd.,* v. *Hughes, 79 L. J. K. B.* 470; (1910) *A. C.* 242; 102 *L. T.* 340.

Here there was indisputably a causal connection between the injury and a hazard of the employment—between the injury and the conditions under which appellants required

respondent to render the service at which he was employed. Under the circumstances, the shock to which respondent was subjected was a natural incident of the work that he was assigned to do.

This is the spirit and indubitable reason of the statute. And such is the rule in England. In view of the identity of language of the British Workmen's Compensation act and ours, in respect of this basic provision, the interpretation adopted by the English courts will serve as a guide in determining the legislative intent. England, if not the author of this broad scheme of compensation legislation, was a pioneer in the field. Our statute, in its general outlines, and particularly in respect of this fundamental provision, was borrowed from the British act, which came into being in 1906. 6 *Edw. VII,* 1906, *ch.* 58, ¶ 1 (1). The provision in question also appears in the earlier English act of 1897. 60, 61 *Vict.* (1897), *ch.* 37, ¶ 1 (1). The present English statute was construed by the courts of that country before the enactment of ours. *Yates* v. *South Kirkby Featherstone and Hemsworth Collieries, Ltd., supra.* It is a well-established rule that a statute so taken from one of our sister states, or from England, will generally be given the construction adopted by the jurisdiction whence it came before its enactment here, if such construction is sound and reasonable and in harmony with our public policy and other laws on the subject. This rule of construction, however, is not, for obvious reasons, an absolute one, and will not, of course, be applied where a contrary legislative intent and purpose are clearly manifested. The underlying theory is that the legislature, in thus adopting the very language of such foreign statute, may reasonably be presumed to have had in mind the construction given in that jurisdiction to the words so employed, and to have used them in that sense. *Sears* v. *Tindall,* 15 *N. J. L.* 399; *In re McNicol, supra; Interstate Commerce Commission* v. *Baltimore and Ohio Railroad Co.,* 145 *U. S.* 263; 12 *S. Ct.* 834; 36 *L. Ed.* 699; *McDonald* v. *Hovey,* 110 *U. S.* 719; 4 *S. Ct.* 142; 28 *L. Ed.* 269; *Lasier* v. *Wright,* 304 *Ill.* 130; 136 *N. E. Rep.* 545; 28 *A. L. R.* 674.

In *Yates* v. *South Kirkby Featherstone and Hemsworth Collieries, Ltd., supra,* the Court of Appeal of England applied the apposite principle to the following state of facts: The applicant for compensation—a collier, forty-six years of age, who had been engaged in coal mining all his life—while working in the pit of his employer, heard a shout for help from nearby. He ran in the direction from which the call came, and found a fellow collier suffering from severe injuries, as a result of the unexpected fall of a prop and some coal. The applicant rendered such assistance as was within his power, but within a few minutes the victim died. From this experience he sustained a nervous shock which incapacitated him from pursuing the work of his employment. It was argued that "the applicant did not see the accident, and he was not working with the deceased man when the prop gave way and the fall of coal occurred;" that there must be "some direct physical connection between cause and effect, and when the effect produced is only due to excitement and alarm from an accident to another, there is no 'personal injury by accident;'" within the intendment of the English Workmen's Compensation act; and that there was no "accident" in the common acceptance of the word. Sir Cozens-Hardy, the master of the rolls, in rejecting this contention, held that: "When a man in the course of his employment sustains a nervous shock producing physiological injury, not a mere emotional impulse, he meets with an accident arising out of and in the course of his employment. It is something unexpected, no doubt, in this sense, that I do not suppose the applicant thought for a moment, when he was doing what was plainly his duty in going to the rescue of his fellow workman, it would have this physiological effect on his system, but it had that effect. There is no malingering; it is a perfectly genuine case. * * * I think, therefore, this is a case which falls within the act of parliament on the same principle and in the same way as if the man, on going to the rescue of the other collier, had been injured by this fall of coal, or had stumbled and fallen on his way there. That would have been a case undoubtedly within the act; and I

can see no real difference in principle, when once you get rid of the danger of malingering, between that case and the case where a physiological injury—physiological damage—is produced by reason of what happened to this man when he went in the course of his duty to the neighboring stall and saw what had happened to his fellow workman."

In *Charles Wall., Ltd., v. Steel,* 8 *B. W. C. C.* 136; 84 *L. J. K. B.* 1599; 112 *L. T.* 846, the same court considered a case in which a workman was rendered unconscious by a brick falling upon his head. Sir Cozens-Hardy, again as master of the rolls, found that the injury to the head, which produced a scalp wound, "occasioned some action of the brain which affected the whole system," and that "from the very beginning he was suffering from neurasthenia," with resultant incapacity. He held that this was a compensable injury.

Moreover, this statute declares a beneficent policy, and should be liberally construed to effectuate it. *Sigley* v. *Marathon Razor Blade Co., supra.* It results that the judgment should be affirmed.

Judgment affirmed, with costs.