NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ANNA BROWN, PETITIONER, v. BRANN & STUART COMPANY AND TRAVELERS INSURANCE CO., RESPONDENT.

Decided August 10, 1942.

For the petitioner, *David Roskein.*

For the respondent, *Warren A. Sprout, Jr.* (by *William J. Weliky*).

\*     \*     \*     \*     \*     \*     \*

The primary issues presented for determination are (1) whether or not the petitioner's decedent's death bore a causal relationship to an accident which arose out of and in the course of his employment with the respondent, and (2) did the respondent have due notice or knowledge thereof as contemplated by the act (*R. S.* 34:15-17; *N. J. S. A.* 34:15-17). The other factors such as dependency and wages do not appear to be seriously in issue.

A summary of the facts, as disclosed by the evidence, will be helpful in the resolution of the basic questions involved in this litigation. Joseph Brown, the petitioner's decedent, was a man forty-four years of age who had entered the employ of the respondent as a laborer on April 18th, 1941. He had been in apparent good health so far as outward appearances were concerned, although he was subject prior to the occurrence in question, to occasional periods of indigestion. From

these he obtained relief by taking bicarbonate of soda. With this exception, an operation for a hernia some six years previously and an industrial accident to a toe, the decedent had had no previous occasion to secure the services of a physician, and outwardly at least appeared in sound health. Nor did he exhibit by complaint or otherwise any signs of a physical infirmity. The testimony of one, John Frederick, a dock builder, who performed his work in close proximity to the decedent, described in considerable detail the nature of the work in which the decedent was engaged. That it was fairly laborious is undisputed. The decedent was required to perform part of his duties while standing in hip boots within a pit, the bottom of which contained muck and mud and was described by the witness as being like quicksand. In addition to wielding a pick and shovel, the decedent was required to shift and move large wooden butts or piles which weighed upwards of 600 pounds each, fasten a cable or rope about same, and while two fellow laborers pulled the object from an earthen embankment above, the decedent would lift and then push the heavy object while standing knee deep in mud with little or no leverage available to him. These piles had been cut off by the dock builders in connection with the concrete pouring activities incident to the construction job in which the men were engaged. The removal of the piles in the manner thus described was repeated by the decedent and his two fellow laborers as often as the work required. This type of work was described as being very strenuous and in fact one of the witnesses referred to it as "a terrible job" and "brutal."

During the first day of his employment (Friday) the decedent performed the foregoing duties in what was evidently a satisfactory manner. There was no work on Saturday or Sunday and on Monday, April 21st, 1941, he reported for work in his usual state of health and during that day resumed the laboring activities above described. In the early afternoon about 2:30 o'clock while he was within the pit knee deep in mud, engaged in these activities, he complained to Fredericks that he had a pain in his side from lifting the piles.

He was advised to take it easy thereafter and some of the other laborers assisted him for the remainder of the after-noon. About 4:30 o'clock, while on the way home, he again complained to Fredericks of pain and indicated the right side of his abdomen as the site of his discomfort. Upon reaching his home he appeared to be shaky, ill and complained of pain in his abdomen. It was of such severity that he was unable to lie in bed and according to his daughter, Jeanette, he paced the floor in evident pain, appeared to be very ill with perspiration standing out on his forehead. She also testified that he was very muddy and dirty and exhibited in addition to great pain, considerable nervousness, alternately resting and then walking about the house unable to find comfort in either activity. The decedent died on April 23d, 1941, after two days and nights of excruciating pain, during which he was unable to recline on a bed but sat on a chair.

Dr. George J. Kohut was summoned to the decedent's home that evening and found him complaining of severe abdominal pain and in obvious distress. Upon examination, which the doctor found it difficult to make, because the pain did not permit the petitioner to lie down, this physician found a boardlike rigidity of the abdomen, tenderness of the liver was obliterated, temperature was very much above normal, the pulse a little rapid and a complaint of terrific pain. Dr. Kohut made a diagnosis of a ruptured peptic ulcer and advised hospitalization and surgical intervention since he believed the patient's condition to be acute. This physician was of the opinion that the strain and effort incident to the lifting by the decedent of the heavy piles under the circum-stances of his employment, caused an intra abdominal pres-sure which ruptured what unquestionably was a pre-existing peptic ulcer and resulted in his death.

The petitioner also produced Dr. Irving Applebaum, certi-fied by the American Society of Internal Medicine as a specialist in that field and who is connected with the staffs of numerous hospitals in our state as well as a member of the faculty of Bellevue Hospital. Basing his opinion upon a hypothetical question which embodied all of the essential

facts exhibited in this case, it was the doctor's opinion that the effort employed by the decedent in his work precipitated a rupture of the viscus which lead to a generalized peritonitis and death. He gave it as his opinion that the work and effort required of the petitioner in his employment resulted in an increase in the intraperitoneal pressure which in turn caused a rupture of the viscus. In view of the facts presented, Dr. Applebaum was of the opinion that the patient at the time he first complained of pain while working about 2:30 o'clock in the afternoon, suffered a subacute perforation which was accompanied by some leakage and as the lesion progressed, a peritoneal pressure was created which terminated in death.

The respondent produced no medical witnesses but relied upon the testimony of numerous witnesses, including Thomas Damasco the foreman, Severt Jensen and Charles Jabor, employees. There also testified Warren A. Sprout, Jr., the attorney of record for the respondent who is associated with the Travelers Insurance Co., the compensation carrier covering the respondent. The testimony of the lay witnesses was in the main directed to the point that they observed no accident or had any knowledge thereof. The testimony of Damasco has little probative force in that there is a definite element of doubt in his ability to identify the decedent. The fact that this witness was obliged to hire large numbers of men for defense work adequately accounts for his lack of identification. Jensen's testimony in my opinion is completely neutralized by reason of the divergence of his testimony as given in court from the statement which he gave to the insurance company representative, Mr. Sprout. This witness conceded, however, that while still in the employ of the respondent shortly following the death of Joseph Brown he obtained the death certificate in this case from the undertaker and delivered same to the office of the respondent.

\*　　\*　　\*　　\*　　\*　　\*　　\*

There is no doubt in my mind that the decedent was required to engage in strenuous physical activities under difficult and adverse conditions while assisting in the lifting of the piles which weighed upwards of 600 pounds. It was in the course of the performance of this very work that he first

complained of pain which became progressively acute and intense and necessitated the attendance of a physician before the day was over. The proofs adduced by the petitioner, both lay and medical, are satisfactory and convincing that the strenuous physical activities of the decedent necessitated and resulted in intra abdominal pressure while endeavoring to lift the heavy objects from the mud and muck. While I am satisfied that he possessed a pre-existing peptic ulcer the testimony satisfies me that this condition prior to May 13th, 1941, was non-disabling and without manifesting any disabling symptoms. No extended citation of authority is necessary in support of the well established rule that where trauma or effort superimposed upon an underlying or pre-existing condition results in either a rupture or aggravation of that condition, an accident is performed. *Holzworth* v. *Hedden Iron Construction Co.,* 1 *N. J. Mis. R.* 381; *Bernstein Furniture Co.* v. *Kelly,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832. This phase of the litigation involved has recently received the consideration of our appellate courts in *Molnar* v. *American Smelting and Refining Co.,* 128 *N. J. L.* 11; 24 *Atl. Rep.* (2d) 392; *Ciecwirz* v. *Public Service Electric and Gas Co.,* 128 *N. J. L.* 16; 24 *Atl. Rep.* (2d) 394; *Passafiume* v. *H. T. Heinz, Inc.,* 128 *N. J. L.* 27; 24 *Atl. Rep.* (2d) 394. In the foregoing cases the principals enunciated in the earlier decisions have been reaffirmed and it is now established beyond question that a compensable accident is made out upon a showing that there exists a causal relationship between the stress, strain and exertion occasioned by the decedent's work and his ensuing death. This particularly where there existed an underlying disease or weakened pathological condition. Nor is the degree of exertion of any consequence so long as it is shown that the strain or effort required by the employment was the constructive factor in the breakdown of the underlying condition. Nor are adjudications of found cases not unlike the one at bar where compensation has been allowed for the disability or death resulting from ruptured ulcers. *Hickey* v. *Hoffman Beverage,* 19 *N. J. Mis. R.* 516; 21 *Atl. Rep.* (2d) 632.

Recognizing, as our cases do, that reasonable probability and not absolute medical certainty is the test to be applied in compensation cases, *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.*, 111 *N. J. L.* 487; 170 *Atl. Rep.* 22, and all that is required for the petitioner to prevail is that the claimed conclusion from the offered facts be a probable or more probable hypothesis with reference to the possibility of other hypotheses, *Belyus* v. *Wilkinson Gaddis Co.*, 115 *N. J. L.* 43; 178 *Atl. Rep.* 181; *affirmed,* 116 *N. J. L.* 92; 182 *Atl. Rep.* 873, I am satisfied that the petitioner's evidence in the instant case more than meets the burden of proof which is hers. My careful consideration of the proofs adduced, and all probable inferences deducible therefrom, convinces me and I find that the petitioner has properly established factually and legally that her decedent met with an accident on April 18th, 1941, which arose out of and in the course of his employment with the respondent, that his death shortly thereafter was causally related thereto and that she is entitled to compensation in accordance with the statute.

We next proceed to examine the merits of the second point raised by the respondent, to wit: that the respondent did not have requisite knowledge or notice as contemplated by the statute, *R. S.* 34:15-17; *N. J. S. A.* 34:15-17. The evidence is undisputed that on April 25th, 1941, within two days after the death of the employee, an attorney of the Travelers Insurance Co., the compensation insurance carrier of the respondent employer, together with two other investigators, were assigned to and investigated the death of Joseph Brown. They not only interviewed the employees of the respondent who were working with the decedent at the time of the alleged accident at the employer's premises and in the presence of representatives of the respondent Brann & Stuart Co., but also obtained signed statements from them with respect thereto. In addition, shortly thereafter, one Jensen, an employee of the respondent, obtained from the undertaker a death certificate and delivered it to the respondent. Representatives of the respondent attended the funeral of the decedent, turned over his accrued wages to the widow, and

obtained from her a return of his employment badge. All this within a week or so following the accident and death. The design and purpose of notice as required by the statute *R. S.* 34:15-17; *N. J. S. A.* 34:15-17 is to give the employer the benefit of a timely investigation of the circumstances attending the alleged accident or death. *Hercules Powder Co. v. Nieratko,* 113 *N. J. L.* 195; 173 *Atl. Rep.* 606. In view of the foregoing activities of the respondent or its car- rier, it is obvious that more than ample opportunity was afforded for a timely investigation which was conducted by persons privy to the employer who were expert and adept at this type of work. First-hand knowledge by the respondent is not required under the adjudicated cases. The state is satisfied if the employer is in possession of what is called "knowledge in common parlance, such knowledge as most of us are confined to in the daily affairs of life." *Gamon Meter Co. v. Sims,* 114 *N. J. L.* 590; 178 *Atl. Rep.* 92; *Hercules v. Nieratko, supra; Allen* v. *City of Millville,* 87 *N. J. L.* 356; 95 *Atl. Rep.* 130; *affirmed,* 88 *N. J. L.* 693; 96 *Atl. Rep.* 1101; *Farrel* v. *Ferry Hat Co.,* 10 *N. J. Mis. R.* 319; 159 *Atl. Rep.* 153, 154. From a careful consideration of all the testimony adduced directed to this point, I have reached the conclusion and find that the respondent and its carrier not only obtained knowledge within ninety days of the date of the occurrence of the injury and death but also received sufficient notice as contemplated by the statute *R. S.* 34:15-17; *N. J. S. A.* 34:15-17, with respect to same.

Accordingly I find and determine that the petitioner's dece- dent, Joseph Brown, on the 21st day of April, 1941, met with an accident that arose out of and in the course of his employ- ment with the respondent, Brann & Stuart Company, which injuries were causally related to his death on the 23d day of April, 1941, that the respondent had notice and knowledge thereof within the requirements of the statute.

\*     \*     \*     \*     \*     \*     \*

STEPHEN J. LORENZ,
*Deputy Commissioner.*