Appellant seeks a review of the judgment of the Salem County Common Pleas Court, which reversed a judgment of the Workmen's Compensation Bureau in appellant's favor, on his petition filed November 12, 1943, alleging injury to his left eye by reason of an accident arising out of and in the course of his employment. The respondent denied the occurrence of the accident. The determination of the occurrence or nonoccurrence of an accident in effect disposes of the matter.
In May, 1940, appellant underwent an operation for a detachment of the retina in the left eye. The testimony is unchallenged that the operation was successful and that appellant's post-operative vision was 75% to 80% uncorrected. According to the testimony, "His right eye had a complete detachment of the retina. He had had a cataract extraction of that eye done, because he had developed a cataract following his detachment, * * * and the vision in that eye was hand movements; he could just see a moving hand." In September, 1943, appellant was employed by defendant in its sheet metal department. He testified that "there was a piece of metal I was trying to straighten out. So in order not to leave any hammer marks in it, I went out and got a piece of wood. I started hammering the piece of wood to straighten the metal out to leave no hammer marks in it. The wood splintered and a piece jumped up and hit me in the eye." On the day following the alleged accident, appellant went to the respondent's dispensary and was treated for an eye condition. The appellant first stated September 14, 1943, as the date of the accident, but when it was shown that he was treated for an eye condition on September 17th, which he said was the day following the injury, the petition was *Page 111 
amended to allege September 16th as the date of the accident. It is undisputed that appellant was treated on September 17, 1943, by respondent's attending nurse for some condition of his left eye, which she described as ulcers of the eyelid. On September 20, 1943, he was operated on for detachment of the retina in the left eye, at the University of Pennsylvania Hospital, by a Dr. Adler, who performed the operation on plaintiff in May, 1940. On November 16, 1943, and on February 9, 1944, two further operations were performed for the same condition. It was testified by appellant's expert that an examination of the left eye, on January 11, 1945, disclosed about 7% vision in that eye.
The testimony is that the condition of appellant's left eye from May, 1940, when the operation was performed for detachment of the retina, until the day of the alleged injury was good. This was for a period of over three years. The medical experts for both appellant and respondent agreed that trauma could cause a detachment of the retina in an eye.
The primary question, therefore, is, did appellant suffer a trauma which probably caused the condition complained of? Appellant testified to the incident as stated, and that he suspended work for a short time, put cold water on his eye, and when it did not feel right went to the plant dispensary the next day. One Carpino, a friend of appellant, testified that he came into the department where appellant was working on his way to the smoking corral for the purpose of taking a smoke, and he saw the appellant hammering the wood. He waited and saw the piece of wood fly up and strike the appellant's left eye. They went together to the corral and appellant complained of injury and pain in his left eye.
Respondent claims that no notice of the injury was ever given to it, or to any of its employees. Dr. Adler testified that the hospital records, taken by an assistant, and not by him, do not disclose any statement of trauma. The respondent's nurse testified that her records do not disclose any trauma. She relied entirely on her records. A Mr. Smith, general foreman of the sheet metal department, testified that he had no report of an accident and does not recall being so informed *Page 112 
by appellant. The appellant testified that he told Mr. Smith that "I'd got hit with a piece of wood in the eye and I was seeing a spot in front of my eye. It was a little inflamed and I didn't know what the condition of it was, so I told him I was going to the hospital. I couldn't leave the job unless I notified my foreman where I was going." One Lamotte, appellant's shop foreman, testified that some time after September 17th, he thought about a week, Carpino reported to him that Flocco was in the hospital for an operation on his eye. He said he "passed the word along" to someone, but he couldn't recall who it was.
The Deputy Commissioner saw and observed the witnesses and was, undoubtedly, impressed by the veracity of appellant and his friend, Carpino, because he said in his determination: "I firmly find the petitioner did sustain an accident which arose out of and during the course of his employment."
A careful and critical review of the testimony, which, on behalf of appellant is direct and persuasive and on behalf of respondent is not direct but merely that its witnesses have no present recollection of being told of the accident, leads to the conclusion that plaintiff sustained the burden of showing that he did sustain an accident arising out of and in the course of his employment. We so find.
The only other question is as to whether the accident was the probable cause of the injury to appellant's eye.
The medical witnesses for both appellant and respondent testified that trauma causes a detachment of the retina in an eye. Dr. Maldeis stated that he "would consider it very probable," from the history given by appellant and Carpino that the disability suffered by appellant was caused by the contusions of his eye as a result of being struck in the left eye by the piece of wood in September, 1943. Dr. Taylor, being asked: "Q. Now, doctor, is it possible for a trauma or an accident to cause a detachment of the retina? A. It certainly is." Dr. Adler, called for respondent, testified as follows: "Q. And you also, doctor, have taken into consideration the fact that trauma invariably is a cause of detached retina? A. Perfectly agreed, providing it is trauma of sufficient nature, *Page 113 
sufficiently severe to be incriminated; that is, it has to be severe enough trauma to make one feel that it is likely * * *."
If an injury arising out of and in the course of the employment causes the condition complained of, or if it aggravates an existing or a pre-existing disease, it is sufficient to support a finding for compensation. In the instant case, it was testified that appellant had no difficulty with his left eye from the time of the operation thereon in 1940, until the alleged injury made the basis of his present claim.
We conclude that the evidence "furnishes a basis of rational inference, tantamount to legal proof of the fact," that appellant's eye condition, "resulted from an accident which arose out of and in the course of his employment." Hercules Powder Co.v. Nieratko, 113 N.J.L. 195 (Sup. Ct. 1934); affirmed, 114Id. 254 (E. A. 1934).
The judgment of the Salem County Common Pleas Court is accordingly reversed, and the judgment of the Compensation Bureau is affirmed, with costs.