## Monmouth County Court of Common Pleas.

### CHRISTINA SIMPSON, PETITIONER-APPELLEE, v. SEABOARD ICE COMPANY, RESPONDENT-APPELLANT.

Decided February 25, 1943.

For the petitioner-appellee, *Benjamin Madnick.*

For the respondent-appellant, *Arthur T. Vanderbilt.*

GIORDANO, C. P. J. The subject of this appeal arises out of the Employers' Liability Act. For the purpose of determining the basic issues involved in this case it becomes necessary to review the circumstances of the decedent's employment and activities immediately preceding his death. The evidence discloses that the appellant is in the business of manufacturing and distributing ice. Its plant and store house is located in Neptune City, Monmouth County, New Jersey. Appellee's decedent, hereinafter referred to as Simpson, was 47 years of age and had been employed by appellant for a number of years prior to 1940. He was employed in the store house storing ice. His employment was not continuous but seasonal. His work consisted principally of pushing cakes of ice in the storehouse a distance of twelve to fifteen feet, and it required the expenditure of ten pounds of effort to push each cake of ice. In addition to this work it was his duty part of the time to lift wooden lids weighing approxi-

mately 60 pounds, by the use of two rods which were attached to the ends of each lid.

At midnight of October 15th, 1940, Simpson reported to work. His hours of work were to be from 12:00 P. M. until 8:00 A. M. on October 16th, 1940. From 12:00 o'clock midnight until 2:00 A. M. of the morning of October 16th, he performed the work heretofore referred to. At 2:00 A. M. Simpson stopped work to eat his lunch. While eating his lunch he sat on the desk along side of one Warren Hulse, an engineer employed at the plant and who was Simpson's immediate superior. After finishing his lunch Simpson had a smoke and then read a magazine. During this period of time, which according to the evidence, was estimated to be at least 45 minutes, Simpson was completely at rest and doing no work. At the conclusion of his lunch hour and before commencing work he told Mr. Hulse that he felt ill and that he thought he had indigestion. Hulse advised Simpson not to go back to work. Simpson, however, did not take Hulse's advice and resumed work at about three o'clock in the morning. Hulse testified that he was near Simpson most of the time and noticed that he was getting sicker and that his face was getting white. The testimony discloses that from three o'clock in the morning Simpson was lifting lids previously described and so continued until 4:00 A. M., after which he lowered 34 cakes of ice from the dip tank. After lowering this group of ice he went into the storage house to pull them, and while so pushing the ice, he suddenly waved his hand to the engineer Hulse to come and take his place. Simpson stopped work immediately and went out to sit on the chair by the desk where he had had his lunch. The testimony discloses that Simpson could not answer Hulse at first and the color of his face was real white. Simpson sat in the chair for about 10 or 15 minutes and at about 5:00 A. M. on the morning of October 16th he was driven home by Mr. Hulse.

The decedent's wife, Christina Simpson, testified that she saw her husband after he was brought home that morning between 5:00 and 5:30 A. M. She observed her husband sitting in a chair with his head back against the wall, his face very white and that he was gasping for breath. She con-

tacted Dr. Jamison who was unable to come that morning, but she succeeded in contacting Dr. Schlossbach who visited her husband. Mrs. Simpson testified that the next day Dr. Jamison saw her husband who remained at home from October 16th to October 21st, on which day he was taken to the Fitkin Memorial Hospital.

Christina Simpson further testified that during the time he was home he would continually gasp for breath and keep rubbing his chest; that he did not sleep well during this period of time and that she was awakened by her husband and requested to put his head upon pillows as he could not breathe; that his appetite was very poor and that he spent most of the time at home. She also testified that the decedent had been in good health prior to October 16th, 1940.

Simpson died on October 21st, 1940, and the death certificate, which was marked in evidence, states the cause of death to be due to "heart failure and coronary occlusion."

The respondent introduced evidence that during the evening of October 16th, 1940, which was the same day he was brought home by Mr. Hulse, Simpson came back to the plant about 6:00 o'clock, saw the other employees working on the night shift and spoke to Mr. Vreeland, the chief engineer, and asked Vreeland whether he had made arrangements for him to come back to work. In answer to his inquiry he was told that another man had been hired to take his place and that since there was only four or five days more work to do, there would be no use for Simpson to return. The evidence further discloses that on October 17th he returned to see Mr. Vreeland to ascertain whether or not he, Simpson, could return at 12:00 o'clock that night. According to the testimony, Simpson told Mr. Vreeland that there was nothing wrong with him, that he had a little upset stomach and that his doctor told him he was O. K. and able to work. Vreeland, however, did not like the way he looked and told him to please stay off work. Simpson apparently got angry and went off in a huff. He went downstairs, grabbed his bicycle and tore off down the driveway, jumped over the seat and went on, waving his hand. No one at the plant saw Simpson again, nor did they hear of his death on October 21st until sometime thereafter.

The respondent contends under these circumstances that the petitioner's decedent did not suffer an accident arising out of and in the course of his employment on October 16th, 1940, because Simpson on the morning of October 16th was doing his ordinary work, in the usual manner and was subjected to no unusual heavy physical exertion or strain, and argues further that Simpson, who did not die immediately after having become ill while at work could have died from some other unrelated cause, and suggests that Simpson overexerted himself when on October 17th he "grabbed his bicycle, tore off down the driveway, jumped over the seat and went on, waving his hand." This latter contention is not substantiated by competent proof, and it is elementary that what you assert you must prove by competent and credible evidence, which I fail to find in my analysis of the proof.

It is well established in this state that death must have been caused by accident arising out of and in the course of decedent's employment in order to support an award of compensation, and the decisions in this state are too well known and too numerous to take time to quote. It is just as equally well settled that the burden of proving that an employee's death was the result of an accident arising out of and in the course of his employment rests upon the petitioner. We, therefore, come to these two questions: did the petitioner's decedent suffer an accident on October 16th, 1940, and assuming that he did suffer an accident, did it arise out of and in the course of his employment with respondent?

Our highest tribunal has held that "* * * the requirement that the injury or death arise by accident, under our statute, is satisfied if the claimant discharges the burden of proving that the condition complained of, *i. e.,* the injury or death, is related to or affected by the employment, that is to say, if but for the employment it would not have occurred." *Bollinger* v. *Wagaraw Building Supply Co.,* 122 *N. J. L.* 512, 520; *Ciocca* v. *National Sugar Refining Co.,* 124 *Id.* 329, 334.

Upon the facts here stated I believe that the holding of the Court of Errors and Appeals, in *Hentz* v. *Janssen Dairy*

*Co.*, 122 *N. J. L.* 494; 6 *Atl. Rep.* (*2d*) 409, is controlling.

As for an accident in the sense used in the earlier days, there was none; but it appears to be the effect of our more recent decisions that where the performance of manual labor entails a strain upon the heart without which death would not have occurred but in consequence of which, combined with causes disassociated with the employment, death does occur the experience constitutes an accident within the meaning of the Employers' Liability Act, and that when the contributory strain arises out of and in the course of the employment the accident likewise so arises.

In the English case of *James* v. *Partridge Jones et al.*, 6 *A. C.* 501; 26 *Butterworth's Workmen's Compensation Cases* 277, at least twice cited with approval by our Court of Errors and Appeals; *Hentz* v. *Janssen Dairy Corp. supra; Bollinger* v. *Wagaraw Building Supply Co., supra,* accident was determined upon these statements of pertinent principles:

"I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. * * * Nor do I think we should attach any importance to the fact that this man's health was as described. * * * An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health. * * * The real question, as it seems to me, is this: Did it (this death) arise out of his employment?"

Our cases hold that reasonable probability and not absolute medical certainty is the test to be applied in compensation cases, *Jackson* v. *Delaware, Lackawanna and Western Railroad Co., supra;* 111 *N. J. L.* 487; 170 *Atl. Rep.* 22, and all that is required for the petitioner to prevail is that the claimed conclusion from the facts be a probable or more probable hypothesis with reference to the possibility of other hypotheses, *Belyus* v. *Wilkinson Gaddis Co.,* 115 *N. J. L.* 43; 178 *Atl. Rep.* 181; *affirmed,* 116 *N. J. L.* 92; 182 *Atl. Rep.* 873.

The case of *Ciecwirz* v. *Public Service Electric and Gas Co.,* 128 *N. J. L.* 16; 24 *Atl. Rep.* (*2d*) 394, holds:

"However, whether the work the petitioner was doing be characterized, as "effort expended," or "extra strain," or "exertion of the moment," so long as there was a causal relationship between the employee's work and his disability, then his disability was the result of an accident arising out of and in the course of his employment."

The respondent relies upon the theories expounded by Dr. Yager and Dr. Ruoff. I have carefully read the testimony submitted by these doctors and compared it with the attending physician's testimony, Dr. Jamison, and with that of Dr. Meehan, who qualified as an expert. Our courts, in the decisions that I have examined, do not hold to the same opinion as expounded by Dr. Yager.

The respondent also urges that the case of *Standard Water Systems Co.* v. *Ort,* 110 *N. J. L.* 586; 166 *Atl. Rep.* 335, is analogous to the instant case. I have carefully studied this case and am of the opinion that it is distinguishable and not applicable. In the Ort case it was found, as a matter of fact, that the decedent had completed his work with nothing unusual having happened, whereas in the instant case, Simpson complained during his lunch hour of indigestion but continued nevertheless to do his work, which he was subsequently obliged to terminate because of his inability to continue. His subsequent activities clearly demonstrate that he had no real appreciation of the seriousness of the injury he previously sustained, but the fact remains under the proofs that an accident did occur while in the course of his employment.

A careful consideration of the proofs adduced, and all reasonable inferences deducible therefrom, convinces me that the more reasonable and probable explanation presented by the petitioner's evidence has adequately established, factually and legally, that decedent met with an accident on October 16th, 1940, which arose out of and in the course of his employment with the respondent.

Accordingly, the judgment of the court below is affirmed.