BERTHA E. AUTEN, PROSECUTRIX, v. VICTOR W. JOHNSTON AND ELIZABETH T. JOHNSTON, RESPONDENTS.

Argued January 17, 1935—Decided April 13, 1935.

On *certiorari.*

Before Justices HEHER and PERSKIE.

For the prosecutor, *Russell Fleming* and *Edwin Joseph O'Brien.*

For the respondents, *William M. McConnell* and *David S. Bingham.*

The opinion of the court was delivered by

HEHER, J.   The primary inquiry is whether prosecutrix suffered injury by an accident which arose out of and in the course of her employment as a domestic servant in the home of the respondents.  This question was resolved in the affirmative by the compensation bureau, and in the negative by the Sussex Court of Common Pleas.

These are the circumstances: Concededly, prosecutrix was the victim of a mishap which arose out of and in the course of her employment on April 13th, 1933.   While she was engaged in baking potatoes in the kitchen of respondents' summer home on Lake Mohawk, in the city of Sparta, there was an "explosion" in the oven of the gas stove used for the purpose.   According to prosecutrix, it was of such force as to violently propel her a distance of four feet across the kitchen to a wall, where the back of her head came in contact with a window facing.   These, so she testified, were the immediate

manifestations of injury. "I noticed a slight injury to my eyes, the vision was blurred and I could not see. My hair was burnt and my eyebrows and my eyelashes were burnt off and I had a burn on my left arm." Her injuries were not immediately disabling; and, believing that the consequences would not be serious, she continued at her employment until June 12th, 1933, when a medical examination disclosed a bilateral detachment of the retina.

It is not questioned that an accident occurred. There was a sufficient manifestation of the unusual occurrence in the kitchen to attract the attention of Mrs. Johnston, who was elsewhere in the house. She heard "a slight noise" in the kitchen; she entered and found the plaintiff laughing. The latter explained that "the stove blew out;" she said her eyebrows were singed. The next morning prosecutrix told Mrs. Johnston that her eyebrows were "singed; they feel kind of funny."

The inquiry remains, was the disabling physical condition related to the employment in the statutory sense—was there a causal connection between it and the accident which thus befell prosecutrix? The Common Pleas judge held that prosecutrix had not sustained the burden of proof in this regard; and in this he fell into error.

There is no evidence that prosecutrix was conscious of an affection of the eyes before the occurrence in question; nor is there any basis in the proofs for the conclusion that prior thereto she was afflicted with a disease of the eyes, or any physical ailment related thereto. She testified, and there was no contradiction, that she was then in "perfect" health, and that her eyes were normal. It is undeniable that thereafter there were manifestations of eye trouble. The condition was progressive. This physical impairment was observed by respondents; and Mr. Johnston, in the early part of June, insisted that a consultation be had with his family physician. He chided prosecutrix for not bringing "this to my attention sooner." When he found that this physician was unavailable, he conveyed prosecutrix to an eye specialist in Newark. Apparently, he was not satisfied with the diagnosis; and he

arranged to have her examined by another physician. It was finally concluded that there had been a serious bilateral detachment of the retina, and, in an effort to secure relief, prosecutrix submitted to an operation.

It is fairly inferable from all the facts and circumstances that the retinal condition was traumatic and not specific in origin. Dr. Berk, an eye specialist selected by Mr. Johnston, testified there was no disease of the eyes which would have produced the retinal detachment. And he excluded the theory that this condition had its origin in disease. He explained: "The bilateral detachment would have to be caused by something which would act on both eyes at the same time, and it is hard to imagine how two tumors could begin at the same time or how two retinas could be detached at the same time, and another factor that this patient presented was a very wide tear of the retina at the extreme periphery in the right eye, which I believe is almost exclusively caused by injury." His examination eliminated, to his entire satisfaction, the existence of all non-traumatic factors, and he was led irresistibly to the conclusion that concussion was the probable cause of the retinal detachment. These expert conclusions were not contradicted; no medical testimony was offered by respondents.

It is pointed out by respondent that Dr. Berk testified that there is "no physical way of being certain at all * * * that injury may have been the cause of detachment observed later," and that, therefore, the evidence affords no basis for a finding "as to the specific cause of this particular detachment." Suffice it to say, that probability, and not the ultimate degree of certainty, is the test. *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; *Hercules Powder Co.* v. *Nieratko,* 113 *Id.* 195; *affirmed,* 114 *Id.* 254; *Belyus* v. *Wilkinson, Gaddis & Co.,* 115 *Id.* 43. The physician's testimony satisfies this requirement. He made it clear that concussion was the producing cause of the disabling injury. He reiterated the view earlier expressed: "It is impossible to say that this was the cause but I will say this: that an *injury of this nature* was the cause of her

detachment—the bilateral detachment." It was not requisite that he go further. Whether or no the accident was the probable cause of the concussion which resulted in the bilateral detachment is, under all the circumstances, a question for the trier of the facts; and we find this circumstantial evidence to be such as to afford a fair and reasonable presumption of this fundamental fact. Compare *Atchison* v. *Colgate,* 3 *N. J. Mis. R.* 451; *affirmed,* 102 *N. J. L.* 425. The development of this serious eye condition so soon after the accident, and its rapid progress, bespeak the relationship of cause and effect; it is persuasive that this condition, traumatic in its origin, was the result of the head injury sustained in the accident. There is no other explanation of it; the case is barren of evidence that the injury was otherwise inflicted.

A secondary question is whether there was a joint undertaking by respondents. The bureau found that there was; the Common Pleas concluded that Mrs. Johnston was not a party to the contract of hiring. We resolve this question of fact in favor of the latter. The apposite rule is that, to impose such an obligation upon the wife in a situation like this, there must be either an express contract to pay out of her own estate, or circumstances clearly showing the assumption of individual liability on her part exclusive of that of her husband. The presumption is that, in the employment of a house servant, the wife acts as the agent of her husband; to fix upon her such a contractual liability, it must affirmatively appear that she hired the servants on her own individual credit. *Mooney* v. *McMahon,* 83 *N. J. L.* 120; *Riley* v. *Wortendyke, Ex'r,* 80 *Id.* 663; *Feiner* v. *Boynton,* 73 *Id.* 136; *Wilson* v. *Herbert,* 41 *Id.* 454. This principle is rooted in the obligation of the husband to provide for the care, maintenance and support of his wife. "The duty of providing maintenance and support for the family still devolves on the husband, and the wife may discharge her duties in the management of his domestic affairs without incurring personal responsibility. The purpose and comfort of married life would be defeated if the wife had not authority to hire servants and purchase articles necessary for domestic use, and

for this purpose the law regards her as the agent of the husband. 1 *Pars. Cont.* 347. And it is of the greatest importance to society that the wife should be allowed to perform her duties in the management of the husband's domestic affairs as his agent, without liability on her part, on contracts made by her in the line of her duties, unless she voluntarily assumes a personal responsibility." *Wilson* v. *Herbert, supra.*

So tested, the proofs here do not sustain the claim of a personal undertaking by the wife. She did not pledge her individual credit; nor did prosecutrix render the service on the faith of it. Her ownership of the summer home, standing alone, is of no significance; nor is the fact that, at the time the contract of hiring was made, she had an independent income as a bookkeeper. She and her husband were living together, and he provided for her support. He was also employed; and he, either personally or through his wife, paid from his own income the wages earned by prosecutrix. And the uncontradicted evidence is that all other household expenses were likewise defrayed from his income. There was therefore no basis in the proofs for a finding that the contract of hiring was a joint undertaking.

The judgment of the Common Pleas Court in favor of Victor W. Johnston is reversed, and the judgment entered against him in the compensation bureau is affirmed. The judgment of the Pleas in favor of Elizabeth T. Johnston is affirmed. Prosecutrix is entitled to costs.