MONMOUTH COUNTY COURT OF COMMON PLEAS.

MYRTLE HYER, PETITIONER-APPELLEE, v. J. HOWARD SMITH, RESPONDENT-APPELLANT.

Decided June 22, 1942.

For the petitioner-appellee, *Parsons, Labrecque & Borden* (by *Edmund J. Canzona,* of counsel).

For the respondent-appellant, *Proctor & Nary* (by *Haydn Proctor,* of counsel).

GIORDANO, C. P. J. The single question requiring decision on the facts of this workmen's compensation case is whether petitioner-appellee's decedent died because of carbuncolosis as petitioner-appellee claims or because of pneumonia which respondent-appellant contends developed from independent causes not related to the burns sustained by the decedent on June 26th, 1939.

Raymond Hyer, the decedent, was a man of forty-two years of age. He was employed by the J. Howard Smith Fisheries for over four years preceding the accident. He appeared to be in good health prior to the accident except that he occasionally suffered from carbuncles on recurring occasions. On June 26th, 1939, while in the course of his employment he was severely burned by the explosion of an acetylene torch he was using. He suffered first and second degree burns to

the right arm, shoulder, chest and face and the burned area covered about a fourth or a fifth of his entire body. Dr. Miele, the attending physician, testified that the decedent was in shock and had nervous prostration as a result of the burns. Decedent was sent to the Riverview Hospital in Red Bank, New Jersey, on the same day of the accident and remained there until July 11th, 1939, and thereafter continued to receive treatment at his home until September 2d, 1939, when Dr. Miele discontinued his treatment. The testimony discloses that a few days thereafter Dr. Miele was again called to the decedent's home and upon examination found him prostrated and at the time diagnosed him to be suffering from pneumonia and carbuncolosis and sent him to the Monmouth Memorial Hospital where he died on September 7th, 1939. Dr. Miele diagnosed the cause of death as being septicemia, carbuncolosis and terminal pneumonia and stated in his testimony that in his opinion the decedent's death was connected with the burns of the accident in that the toxic substances from the burns were absorbed into the system and these caused the carbuncles from which in turn by absorption into the system the septicemia developed and resulted in the terminal pneumonia.

The petitioner-appellee filed a claim petition on September 21st, 1939, in which she stated that the cause of death was a result of an explosion of an acetylene blow torch which seriously burned the deceased. The respondent-appellant set forth in his answer that death was in no way related to or caused by the accident.

At the hearings testimony was introduced by the respondent-appellant to show that the decedent returned to work about the 7th day of August, 1939, and performed the duties of gatekeeper for a period of several weeks. It is admitted that this work was lighter than the ordinary work performed by the deceased and that after several weeks of said employment the deceased asked the superintendent of respondent-appellant for an opportunity to do more active work, and accordingly he was put in charge of a group of men and continued to work in the plant full time up to and including September 4th, 1939. It was on this day, according to the

testimony of the petitioner-appellee, that the decedent became sick and that on September 7th he was so sick that Dr. Miele was called in, at which time Dr. Miele ordered decedent sent to the Monmouth Memorial Hospital as indicated above.

The respondent-appellant contends that the decedent had contracted pneumonia as a result of exposure which was caused by his sleeping in his automobile in the latter part of August or the early part of September and relies upon the testimony of two medical experts who were called to give an answer to a hypothetical question predicated upon the contention that decedent contracted pneumonia as a result of exposure.

Dr. Carlos A. Pons performed an autopsy upon decedent and gave as his opinion of the cause of death septicemia staphylococcus and lumbar pneumonia in the terminal stage and testified that in his opinion the septicemia was caused by the carbuncles as a portal of entry of the staphylococcus and that the pneumonia was staphyl pneumonia and that there was no question that the cause of death was this pneumonia.

Dr. Meehan and Dr. Villapiano testified to the effect that the decedent's death was due to the accident of June 26th, 1939, as a result of the chain of events following the same as above described.

It becomes my duty to examine the evidence which I have done and determine whether the petitioner-appellee has established, by a preponderance of probabilities, that the employment was one of the controlling causes without which the death would not have happened. *Gilbert* v. *Gilbert Machine Works, Inc.*, 122 N. J. L. 533; 6 Atl. Rep. (2d) 213; *Calicchio* v. *Jersey City Stock Yards Co.*, 125 N. J. L. 112; 14 Atl. Rep. (2d) 465. In my consideration of the facts which the respondent-appellant has produced to sustain his defense, by which defense he seeks to avoid liability for a cause for which he is not responsible, it must be borne in mind that the burden of proof is upon the respondent employer, to show such cause. *Atchinson* v. *Colgate & Co.*, 3 N. J. Mis. R. 451, 452; 128 Atl. Rep. 598; *affirmed,* 102 N. J. L. 425; 131 Atl. Rep. 921.

I am called upon to resolve a sharp conflict of medical testimony and opinion. The applicable rule as enunciated by the adjudicated cases in that there be shown a "causal relationship" between the work or accident and the resulting disability or death in order that the accident be deemed compensable. *Ciecwirz* v. *Public Service Electric and Gas Co.*, 24 *Atl. Rep.* (2d) 394. The test of causal connection, as approved by Mr. Justice Swayze in *Newcomb* v. *Albertson*, 85 *N. J. L.* 435; 89 *Atl. Rep.* 928, is:

"It seems to me enough if it appears that the employment is one of the contributing causes without which the accident which actually happened would not have happened, and if the accident is one of the contributing causes without which the injury which actually followed would not have followed."

To the same effect are the rulings in *Tutino* v. *Ford Motor Co.*, 111 *N. J. L.* 435; 168 *Atl. Rep.* 749, and *Bollinger* v. *Wagaraw Building Supply Co.*, 122 *N. J. L.* 512; 6 *Atl. Rep.* (2d) 396.

From a careful consideration of all the testimony adduced I am satisfied that the decedent suffered severe burns when his acetylene blow torch exploded. It is undisputed that he was immediately taken to the Riverview Hospital and there remained until July 11th, 1939, and was treated at his home up to and including September 2d, 1939, and that one week later he died at the Monmouth Memorial Hospital. That the decedent was in apparent good health prior to the accident is more or less conceded and fairly inferable from the testimony. Nor does there appear to be any dispute that the only affliction decedent suffered from prior to the accident was carbuncles on recurring occasions. Viewing the uninterrupted sequence of events up to the time of his death on September 7th, 1939, I am constrained to accept as a more logical and reasonable hypothesis the medical theory advanced by the petitioner's witnesses.

It is to be borne in mind that reasonable probability and not ultimate medical certainty is the test to be applied in compensation cases. *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.*, 111 *N. J. L.* 487; 170 *Atl. Rep.* 22; *Auten* v. *Johnston*, 115 *N. J. L.* 71; 178 *Atl. Rep.* 187. All

that is required is that the claimed conclusion from the offered fact be a probable or a more probable hypothesis with reference to the possibility of other hypotheses. *Beylus* v. *Wilkinson Gaddis Co.*, 115 *N. J. L.* 43; 178 *Atl. Rep.* 181; *affirmed*, 116 *N. J. L.* 92; 182 *Atl. Rep.* 873; *Hercules Powder Co.* v. *Nieratko*, 113 *N. J. L.* 195; 173 *Atl. Rep.* 606; *affirmed*, 114 *N. J. L.* 254; 176 *Atl. Rep.* 198.

Accordingly, in the light of all that has been said I hold from the testimony here presented that there was a causal relationship or a chain of causation between the accidental injuries suffered by the decedent on June 26th, 1939, the subsequent lowering of his physical resistance and the contraction by him of the carbuncles from which in turn by absorption in his system the septicemia developed and resulted in the terminal pneumonia which caused his death on September 7th, 1939.

It is my conclusion that the petitioner-appellee has established by a preponderance of probabilities that death ensued from the burns which the decedent received while in the course of his employment and that the respondent-appellant has failed to satisfy the burden of proving his contention that death ensued from any independent agency.

The judgment appealed from is affirmed.