NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

WALKER v. IGOE BROS., INC.

Decided March 8, 1943.

For the. petitioner, *David Roskein.*

For the respondent, *George E. Meredith.*

A petition was filed and served in the above entitled matter praying for compensation under the provisions of *R. S.* 34:15–7, *et seq.; N. J. S. A.* 34:15–17, *et seq.,* and an answer was duly filed by the respondent. The matter came on for hearing before me in Newark at which time the petitioner was represented by David Roskein, Esq., and the respondent by George E. Meredith, Esq.

The case proceeded to trial and at the end of the respondent's case the petitioner asked leave to produce a further witness. Apparently some difficulty was encountered in locating this witness because the matter was carried along for a considerable length of time before I was advised that both sides had rested.

Because of this lapse of time I was reluctant to rely entirely on my own written notes in reaching my conclusions, and for that reason a complete transcript of the record was furnished me. I have carefully analyzed my notes in the case, and I have read the transcript of testimony of the various witnesses before reaching the conclusions hereinafter stated.

The testimony indicates that the petitioner on January 16th, 1939, caught his right hand between the handle of a truck which he was pushing and a door which was opened by someone as he passed it.

Immediately following this occurrence the petitioner went to the first aid room, unassisted, where he reported to the first aid man. This man looked at the petitioner's hand, found nothing wrong with it, and although the petitioner claims that his arm was rubbed with some liquid, the first aid man testified that he did nothing at all for the petitioner because he observed no injury whatever.

After being in the first aid room for a few minutes the petitioner left and returned to his department. The petitioner testified that he rested behind a bundle of wire for about an hour after which he resumed his duties for the rest of the day, which was Monday, and continued at his work until regular quitting time on the succeeding days until Friday night.

The petitioner testified that he did no more lifting after this accident, but this statement was sharply contradicted by his fellow workers including the petitioner's son, who testified that his father had done his regular work as a floorman after the accident.

The petitioner received no medical treatment until about a week after this occurrence when Dr. Benjamin Fenichel was called to his home. At that time the doctor found the petitioner sitting up in a chair complaining of pain in the chest. It appears from other evidence in the case that the petitioner had pains in his chest and across his back and shoulders prior to the incident above described.

The only fact in the case which does not seem to be in serious dispute is the diagnosis. The doctors and experts appearing for both sides testified that the petitioner suffers from an aneurysm of the aorta which pre-existed the accident, and which was caused by a chronic syphilitic condition of long standing.

On this state of facts the respondent by its attorney moved for a dismissal of the petition on the grounds:

1. That the respondent had no knowledge or notice of an accident or injury by accident within ninety days after its alleged occurrence.

2. That the petitioner failed to sustain the burden of proving the type of accident on which he relies, in view of his total failure to corroborate the essential parts of his claim.

3. By the clear weight and quality of the medical testimony that the petitioner's condition was not shown to have been caused or aggravated by trauma.

The petitioner, in presenting his case, relied very strongly, if not entirely, on his own description of the type of accident that he suffered and the subjective complaints which he gave in his testimony. The petitioner's testimony was to the effect that he caught his entire hand, arm and chest between the truck handle and the door, and that in an attempt to extricate himself from this position he was required to jerk his arm violently, and that as a result of this experience he found himself in a state of severe shock, was scared to death and was required to rest for at least an hour before being able to resume any type of employment. However, this testimony finds no substantial corroboration in the testimony of any of the other witnesses in the case. I, therefore, find as a fact that the only injury suffered by the petitioner was a blow to the hand which left no marks of any kind such as a swelling, bruise or laceration, and I further find from the more credible testimony that no other part of the petitioner's body was involved in the accident. I find also from the more credible testimony in the case that the petitioner at the time of and following this occurrence was not in a state of shock.

The petitioner's doctors in reaching their conclusions quite naturally relied upon the description given them in the hypothetical question which included all of the serious complaints alleged by the petitioner, such as a striking of the chest and a straining of the arm and a condition of shock. Basing their opinions on this premise, which, as already indicated, I find to be false, the petitioner's doctors took the position that a pre-existing aneurysm was aggravated by the accident so as to bring on the petitioner's present condition of serious, if not total, disability.

The petitioner's two medical experts, Dr. Otto Lowy and Dr. Irving L. Applebaum, freely admitted during the course of their cross-examination that if the petitioner merely

bumped his hand, and if the symptoms of shock and intense pain in the arm and chest were eliminated, then they would have to conclude that the petitioner's condition was not the result of this accident.

This latter view is expressed by Dr. Lowy in the following quotation from his testimony:

"The court: If the man had merely pain in his hand, then I am satisfied from the doctor's testimony that that is not the type of pain that can be attributed to the condition.

"The witness: That is correct.

"The court: It is a tearing, sharp, intense pain in the entire length of the arm, the shoulder, and chest?

"The witness: That is correct, sir. If that is not true, then I have been misled and I will have to say that there is no causal relationship between this alleged accident and his present condition."

In this connection Dr. Applebaum expressed himself as follows:

"Q. If we are able to show here that the man was not struck in the chest, merely had a bump on the hand, not severe enough to cause an abrasion or any break in the skin, that would not have any effect on the aneurysm in the absence of shock?

"A. I doubt that very much; I don't think it would."

The respondent's physicians took the position that the petitioner was suffering from the natural end results of a pre-existing aneurysm of the aorta caused by a chronic long-standing syphilitic condition. I was particularly impressed by the logic and the clearly stated reasons for reaching his conclusion as given by Dr. Arthur M. Masters, a cardiologist, who appeared for the respondent. This witness, who had the benefit of X-rays and electrocardiograms to assist him in reaching his conclusions, stated that the petitioner presented a "classic" picture of a long-standing syphilitic aneurysm. The doctor testified further that the accident did not aggravate the aneurysm, because the only effect that trauma could have on an aneurysm would be to create a tear or rupture, and if that occurred, the petitioner at the time would have been "sick unto death" and would have bled to death in a very short time.

On cross-examination this witness was asked if it were not possible for a very slight tear to have occurred so as to create a slow oozing of blood from the aneurysm. The witness, admitting this possibility, stated, however, that in that event the blood would naturally back up into the heart, because it would have no other place to go, and that would create an enlargement of the heart which was not evident from the X-ray plates. The doctor stated that the heart was normal in size.

I have given this case unusual thought and study because of its seriousness. After considering the various elements in dispute and having in mind the demeanor of the various witnesses who appeared, I am firmly of the opinion that any injury suffered by the petitioner while in the service of the respondent was of a minor and trivial character. I am satisfied from the clear weight and quality of the medical testimony adduced that the petitioner is now suffering from the end results of a pre-existing aneurysm of syphilitic origin, and that the trifling accident which he suffered while in the employ of the respondent did not contribute in any way to this pre-existing disease, nor did it aggravate it.

I, therefore, find as a fact that the petitioner met with a very minor accident involving his right hand on January 16th, 1939, that the accident caused no temporary disability, and resulted in no permanent disability.

In view of the foregoing, it becomes unnecessary for me to pass upon the other grounds for dismissal urged by the respondent.

My conclusions as above expressed find ample support in the very recent case of *Jones* v. *Newark Terminal and Transportation Co.*, 128 *N. J. L.* 190; 24 *Atl. Rep.* (*2d*) 564, 566; affirmed, *Jones* v. *Court of Common Pleas of Essex County*, 129 *N. J. L.* 58; 28 *Atl. Rep.* (*2d*) 96. The facts in that case are strikingly similar. There the employee suffered an accident which caused a laceration of the scalp requiring sutures. He resumed work within an hour or two and continued thereafter for a period of about two weeks, and was found dead at his place of employment at the end of that period. It was established that death was the result of a spontaneous rupture of an aortic aneurysm.

In commenting upon the facts presented in the case of *Jones* v. *Newark Terminal and Transportation Co., supra,* Mr. Justice Heher stated in part: "Even if the evidence were in equipoise, prosecutrix could not prevail. To warrant a recovery, it is essential that the evidence preponderate in favor of the tendered hypothesis. That must be a rational inference, *i. e.,* such as is based upon a preponderance of the probabilities according to the common experience of mankind. It is required to be a probable or more probable hypothesis with reference to the possibility of other hypotheses. This is the accepted standard of persuasion governing the triers of the facts. The law does not proceed to judgment on pure surmise. *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; 170 *Atl. Rep.* 22; *Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533; 6 *Atl. Rep.* (*2d*) 213; *Jaeger* v. *Elizabethtown Consolidated Gas Co.,* 124 *N. J. L.* 420; 11 *Atl. Rep.* (*2d*) 746; *Auten* v. *Johnston,* 115 *N. J. L.* 71; 178 *Atl. Rep.* 187. To hold on the evidence adduced that the industrial accident was the producing cause of death would be the merest conjecture."

My thoughts and conclusions with respect to the evidence here adduced are aptly expressed in the opinion of the court in the case of *Wolf* v. *National Grocery Co.,* 13 *N. J. Mis. R.* 650; 182 *Atl. Rep.* 625, 626, in the following language: "From a study of all the evidence, it is manifest that the lifting of the carton of groceries and the pain of the initial attack of the disease were merely coincidental. The strain of lifting had no causal relation to the petitioner's condition. The inflammation had matured. He would have been seized with the attack regardless of the activity in which he was engaged at the time. He suffered the affliction despite the lifting, not becasue of it."

In view of the foregoing, it is on this 8th day of March, ordered that the petition be and the same is hereby dismissed without cost to either party.

HARRY S. MEDINETS,
*Deputy Commissioner.*