PASSAIC COUNTY COURT OF COMMON PLEAS.

ANNA ELSIE KLING, PETITIONER-APPELLEE, v. CENTRAL LUMBER AND MILLWORK COMPANY, RESPONDENT-APPELLANT.

Decided March 8, 1948.

For the petitioner-appellee, *Nathan Rabinowitz* (*Ervan F. Kushner,* of counsel).

For the respondent-appellant, *Harkevy & Leib* (*Abraham I. Harkevy,* of counsel).

MacLeod, C. P. J. This is an appeal from a determination of facts and rule for judgment entered in the Workmen's Compensation Bureau which judgment awarded compensation to Anna Elsie Kling and her infant son, George Kling, as total dependents of Joseph F. Kling, deceased. The respondent-appellant has appealed to this court—its contention being that there was no causal connection between the accident admittedly sustained by the decedent and his subsequent death.

The material facts in the case are not in dispute. It appears that on July 24th, 1943, the decedent fell from a platform approximately ten to fifteen feet high, located at respondent's premises. He sustained various injuries, among them being a laceration of the left side of his head immediately over the left eyebrow, which laceration required seven sutures, and a cerebral concussion. The decedent was removed to a hospital in an unconscious state, where he remained overnight and thereafter was treated by his family physician,

Dr. Reuben J. Budd, until November 9th, 1943. Treatment was then resumed on June 2d, 1944, and continued until February 27th, 1945. The decedent died on November 2d, 1946.

There is considerable evidence that from the day of the accident until the day of the decedent's death, he manifested symptoms such as staggering, headache, dizziness, vomiting, nauseousness, and unsteady gait, and that prior to his accident he was free from these symptoms. The sole issue, since the accident has been admitted as arising out of and in the course of decedent's employment with respondent, is whether or not there was a causal connection between the injury to decedent's head on July 24th, 1943, and his death on November 2d, 1946. I had the advantage of oral argument as well as written briefs. I might say that counsel for both parties in this case argued that matter thoroughly and well. I have come to the conclusion that the findings of fact, determination, and rule for judgment entered in the Workmen's Compensation Bureau should be affirmed.

The burden of proof, in cases of this nature, rests upon a petitioner to establish his right to an award of compensation from the respondent. As Mr. Justice Trenchard so succinctly said in *Bryant* v. *Fissell*, 84 *N. J. L.* 72; 86 *Atl. Rep.* 458:

"The burden of furnishing evidence from which the inference can be legitimately drawn that the death of an employee was caused by 'an accident arising out of and in the course of his employment' rests upon the claimant."

I feel that the petitioner in this case has proven by the greater weight of the evidence that the death of Joseph Kling was causally related to his compensable accident. It is not necessary for a petitioner to prove the causal connection between an injury and an accident with mathematical certainty. I think it sufficient that where an employee suffers severe and permanent injuries in an accident arising out of and in the course of his employment and immediately thereafter suffers a decline in health, it is extremely probable that the decline in health and in this case the death of Joseph Kling was caused by the accident he sustained. The test in compensation is probability and not certainty. *Hercules*

*Powder Co.* v. *Nieratko,* 113 *N. J. L.* 595; 173 *Atl. Rep.* 606; *affirmed,* 114 *N. J. L.* 254; 176 *Atl. Rep.* 198. It is true that the medical experts in this case were in disagreement concerning this problem of causal connection, but as was said in *Lundy* v. *Brown,* 93 *N. J. L.* 107; 106 *Atl. Rep.* 362; *affirmed,* 93 *N. J. L.* 469; 108 *Atl. Rep.* 252:

"It is true that the medical testimony in the case is in sharp conflict on the question whether the decedent died as a result of his injuries or from an entirely independent cause. It is not at all surprising to find experts on the opposite sides of the case in disagreement in the matter. If the injuries were the producing cause the proof of the fact is sufficient."

Dr. Harrison P. Martland, who enjoys a widespread reputation as a pathologist, and who is chief medical examiner for Essex County, performed an autopsy on the day of decedent's death. Dr. Martland described his findings as a large tumor, two inches by one inch in size. He denominated this growth as a neuro-fibroid growth. He characterized this type of tumor as slow-developing and slow-growing, and said that there would be a probable relationship between the decedent's trauma and his death by brain tumor if "it was an honest and severe trauma sustained by decedent and if the man was unconscious after the fall and that if the man was stuporous, that would be an indication of a severe head injury." Dr. Martland said in answer to a question propounded by petitioner's attorney as to the causal relationship between decedent's fall and his death as follows: "* * * I don't think there is any doubt about it. Therefore all I can say is that it is a probable aggravation in this case."

Dr. Guy Kim, who is pathologist for the Paterson General Hospital, testifying as a witness for the petitioner was of the opinion that there was a definite causal connection between the decedent's accident and his death. He indicated that if the decedent suffered only a cerebral concussion as a result of his fall, his symptoms would be transitory and would subside in time, but that if a tumor had been aggravated, certain symptoms would persist without let up. In this particular case, I find that these symptoms did persist right down to the date of the decedent's death.

Dr. Reuben J. Budd, who was the decedent's treating physician, testified that he saw Kling in the hospital shortly after his accident, and that he appeared to be drowsy, and that he was just recovering from unconsciousness. So it appears at once that the condition of lassitude which was deemed necessary by Dr. Martland was present in this case. Our Supreme Court, in *Dorion* v. *Federal Shipbuilding and Dry Dock Co.*, 136 *N. J. L.* 302; 55 *Atl. Rep.* (*2d*) 776, decided November 20th, 1947, in a case involving a head injury, said:

"We find the proofs support a finding of a head injury * * *," and continuing: "It is clear in this case that the paralysis was not due to any physical condition which could have caused the injury, since the only inference to be drawn from the proofs is that the result was due to a blow to the head suffered in falling, and we so find."

In the Dorion case, as in the case *sub judice,* the petitioner fell and struck his head. Dorion's wife, as did Mrs. Kling, wife of decedent, corroborated the fact that there was injury to petitioner's head. In the Dorion case, as in the present case, the petitioner within twenty-four hours after the accident began to manifest neurological symptoms. Mr. Justice Bodine, in sustaining an award of the Compensation Bureau, pointed out that the petitioner's good health before the accident and his subsequent decline following the accident coupled with the fact that the petitioner suffered a head injury, was sufficient to sustain the award.

Dr. Reuben J. Budd was the only medical witness in this case who was able to testify as to decedent's physical condition both before and after the accident of July, 1943. A treating physician who was acquainted with his patient's physical condition not only on the day of an accident but prior thereto and throughout the course of treatment is in a much better position to express an opinion as to cause and effect than medical experts who examine a petitioner once or twice for the purpose of testifying for a respondent. *Schumacker* v. *Wright Aeronautical Corp.,* 24 *N. J. Mis. R.* 18; 45 *Atl. Rep.* (*2d*) 447.

If the respondent endeavors to avoid liability by claiming that the death of the decedent was due to a cause for which the employer was not liable, I think that the burden of proof would be on them to show such other cause. *Atchinson* v. *Colgate & Co.*, 102 *N. J. L.* 425; 131 *Atl. Rep.* 921. In the present case there was a continuous chain of symptoms, commonly called bridging symptoms, suffered by the decedent between the time of the accident and the time of his death. These symptoms were entirely absent before the accident, and it leads me to the conclusion that the accident precipitated a latent condition, at least which ultimately resulted in Mr. Kling's death. Our courts have continuously held that a probable hypothesis is sufficient to sustain a recovery. *Auten* v. *Johnston*, 115 *N. J. L.* 71; 178 *Atl. Rep.* 187.

Respondent urges upon me the fact that this case is one of novel impression. I might point out that the case of *Rightmyer* v. *Totowa Borough*, 16 *N. J. Mis. R.* 161; 197 *Atl. Rep.* 650, is a case involving a blow on the head, together with a "complete chain of neurological symptoms." On the basis of this case alone, I think there is adequate precedent for my decision here. It is interesting to note that the Rightmyer case was appealed, by the respondent, to the Passaic County Court of Common Pleas, where the judgment for the petitioner was affirmed by that court. 17 *N. J. Mis. R.* 300; 8 *Atl. Rep.* (*2d*) 772. The medical experts in this case are unanimous in the opinion that it would be impossible to prove that the tumor existed in decedent's head on the date of the accident, but I do not consider that the law required proof of this fact. The decedent, prior to his accident, was a working unit, and following his accident, he was a changed man. The mere fact that the explanation for the cause of tumor has not yet been established with certainty in medical science, yet even if deceased was suffering from a tumor before his accident, it will be quite within the province of the court to find that the death of Joseph Kling was the result of the unusual and forcible pressure on his brain already weakened by disease, which but for the unusual strain would have held out for a considerable period. *Voorhees* v. *Schoonmaker Co.*, 86 *N. J. L.* 500; 92 *Atl. Rep.* 280. The Voorhees case

was cited with approval in *Geizel* v. *Regina Co.*, 96 *N. J. L.* 31; 114 *Atl. Rep.* 328, wherein the Supreme Court said:

"Death may be found as having been caused by an accident, although there was a diseased bodily condition prior to the injury, without which death would not have ensued, or, as may be inferred here, the undeveloped and dangerous physical conditions are set in motion producing such result."

The lapse of time between the date of decedent's injury and his subsequent death is not significant because the accident of decedent was admittedly a severe one and he had marked bridging symptoms which continued from the time of his accident until the time of his death. *Elting* v. *S. Smith Coal Co.*, 130 *N. J. L.* 250; 32 *Atl. Rep.* (2*d*) 601.

The fact that Joseph Kling's employment was one of the contributing causes without which the accident, which actually happened, would not have happened, and if the accident is one of the contributing causes without which the injury, which actually followed, would not have followed, then the award of the petitioner will be sustained. *Tutino* v. *Ford Motor Car Co.*, 111 *N. J. L.* 435; 168 *Atl. Rep.* 749.

Since the decedent suffered a general health retrogression from the time of his accident until the time of his death, this of itself is indicative of the fact that without the accident he would not have died. *Woodle* v. *Sullivan*, 19 *N. J. Mis. R.* 458; 21 *Atl. Rep.* (2*d*) 151. When an employee receives personal injuries from an accident arising out of and in the course of his employment and he dies from these injuries, the death may be the result of the injury within the Workmen's Compensation Act, *N. J. S. A.* 34:15-1, *et seq.*, even though it was not the natural result of the injury. *Lundy* v. *Brown & Co.*, *supra.*

The judgment below is affirmed.