PATRICK J. PURCELL, RESPONDENT, v. INTERNATIONAL
MOTOR COMPANY, APPELLANT.

Submitted December 10, 1917—Decided March 4, 1918.

On appeal from the Supreme Court, in which court the following memorandum was filed by Mr. Justice Bergen:

"The defendant in *certiorari* was injured October 21st, 1915, while in the service of the prosecutor, by an accident which it is not questioned arose out of and in the course of his employment. The proofs warrant an inference that prior to the accident the defendant was serving as a machinist, performing such work as his foreman might direct, at a weekly wage of $18.48, and that after the accident he was continued in the service of the prosecutor as night watchman at one-half of his former wages until January 6th, 1916, when he was discharged for incompetency; that thereafter the prosecutor paid the defendant $9.24 per week until $360.36 had been paid, when further payment was refused. The defendant then filed a petition under the Workmen's Compensation act and was awarded $9.24 per week for one hundred and seventy-five weeks, for permanent, partial disability of his eyes, and eight weeks and three days for temporary disability of his arm, making a total of one hundred and eighty-three weeks and three days, subject to a credit for $360.36 paid after January 6th, 1916.

"The prosecutor first urges that the allowance for temporary disability was unauthorized because during the period for which the allowance was made the defendant was able to work and earn wages, and therefore there could be no temporary disability. In other words, the claim is that the temporary disability must be total to entitle a workman to any compensation under the statute. This is not a proper construction of the statute, for paragraph 11, as amended in 1913 (*Pamph. L., p.* 302), provides: 'For injury producing tem-

porary disability,' and this does not require that a temporary disability must be total, but provides for any disability of a temporary character, which to any degree impairs the earning capacity of the injured person by depriving him of the use of physical functions existing before the accident, and in this case compensation for the injury to the arm was limited to the continuance of the temporary disability. The liability attaches when the accident happens, and it can only be discharged in the manner provided for in the statute. Nor does the fact that the defendant was paid wages by the prosecutor for services, of a less exacting character, rendered after the accident, affect the amount of compensation to be awarded when the wages are paid for a service of a different nature from that performed before the accident, and for a less wage, without any agreement or understanding, if such an agreement can legally be made, that such earnings were paid on account of the compensation allowable under the act. *De Zeng Standard Co.* v. *Pressey,* 86 *N. J. L.* 469. The contention of the prosecutor on this branch of the case cannot be sustained

"The next point argued is that the reason given by the trial court for awarding compensation during one hundred and seventy-five weeks for 'nearly one-half of a total disability of both eyes,' is not supported by the evidence. There was testimony which justifies the inference that the injury to the eyes of the defendant reduced their efficiency to at least one-half their normal capacity and if the judgment is in any respect erroneous in not fixing a greater time limit it would, to that extent, be a loss to the defendant who does not complain. The testimony shows that defendant was a machinist; that his trade required good eyesight, and that since the accident which caused the injury, and because of it, his eyesight is so deficient that he cannot pursue his former trade. The defendant testifies that he cannot distinguish, clearly, objects with his right eye, except within a limited area, and that the vision of his left eye is double unless he turns his head to one side and covers the other eye. The accident happened October

21st, 1915, and Doctor Ard, an eye specialist of known repute, testified that he had examined the defendant's eye in May, 1916, and once or twice after that date, the last being December 12th, 1916, two days before the trial, and that the disability to the right eye was two-thirds and to the left eye one-half. This witness, in answer to a question containing the testimony of the defendant concerning the physical condition of his eyes, inquiring the extent of the disability which the defendant suffered from the injury to his eyes, replied: '*A.* Well, I think if these statements are all true that I have made, that he is absolutely debarred—that is, at least as long as the disability remains, he is unable to follow his trade.' This and the other testimony in the case, I think, warrants the finding that the injuries to defendant's eyes amounts to 'nearly one-half of a total disability of both eyes,' which is in effect a partial, permanent disability.

"The next point is that the court based the percentage of disability upon the character of the work in which the defendant was engaged, viz., machinist, and that this is contrary to *Bateman* v. *Smith,* 85 *N. J. L.* 409. This is founded upon the following statement by the court: 'The petitioner can never again work at his trade as a machinist and must confine his employment to occupations that will never produce more than a small compensation;' this statement simply relates to the effect the injury had on the earning capacity of the defendant, and has no bearing upon the percentage of disability based upon the character of the person or his work, as in the case last cited.

"The next point is that there is no proof of permanent disability, but only temporary injury to the sight of defendant's eyes, and this is rested in part on the following testimony of Doctor Ard: '*Q.* Doctor, what have you to say as to the permanency of the injuries received by Mr. Purcell? *A.* I don't know whether they are permanent. I don't believe they are permanent. I think there is a chance to recover, that is sometime or other. I cannot answer that question.' And in answer to another question he said: 'It might last from three months

to ten years, nobody knows,' and when asked whether the injury was permanent, replied, 'I don't know.' I think this evidence, with that of the defendant and the other testimony in the cause, justifies the finding that the injuries were permanent within the meaning of the statute. More than a year had elapsed after the accident without any appreciable improvement, and from the testimony of the defendant and the long continuance of the disability, an inference can be drawn that it is probably permanent, Doctor Ard testified that he could not tell whether it would be permanent or not, but that it might last from three months to ten years.

"In view of all this evidence it would seem that the extent of the permanency of the injuries cannot now be determined, the present indications being that they are permanent. Whether the court in fixing the number of weeks during which compensation should be paid for partial disability to both eyes of a permanent character, reached a proper conclusion, was not raised on the argument nor by the record, and therefore that question has not been considered.

"My conclusion is that under this record, considering only the questions raised and argued, the judgment should be affirmed."

For the respondent, *Codington & Blatz.*

For the appellant, *Kalisch & Kalisch.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Mr. Justice Bergen in the Supreme Court.

PARKER, J. (dissenting). The award rests on a finding of permanent injury to the eyesight which, in my judgment, is not supported by any evidence in this case.

At the trial both sides rested without any testimony of the permanent character of the injury. Petitioner had not

lost either eye, and claimed only impairment of vision. The court called attention to lack of evidence of permanency of impairment, and petitioner recalled an expert previously examined, who declined to give any opinion that it was permanent; and an examination of the whole of his testimony makes it clear that he considered the petitioner a malingerer. He said in substance that injuries of that character were sometimes permanent, but usually not. Further he would not go. The court, in deciding the case, said that as the injury was not shown to be temporary he must conclude that it was permanent.

This manifestly reversed the burden of proof. I take it for granted that in a workmen's compensation case the petitioner must bear the burden imposed on other plaintiffs who seek to deprive defendant of money or property by a claim of damages, of proving the amount of damages to which he was entitled.

Of course, if he has lost an arm, or a leg, or an eye, the situation itself speaks, because we know the missing member will not grow again. But when the injury is not claimed to be more than a functional impairment of vision, the court must depend on the knowledge and experience of experts, and if no expert testimony points to permanent impairment, the court should not assume it.

I think the judgment should be reversed.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, MINTURN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 10.

*For reversal*—TRENCHARD, PARKER, KALISCH, JJ. 3.