New Jersey Department of Labor,
Workmen's Compensation Bureau.

EDWARD GLASS, PETITIONER, v. KIECKHEFER CON-
TAINER COMPANY, RESPONDENT.

Decided January 25, 1946.

For the petitioner, *Edward V. Martino.*

For the respondent, *French, Richards & Bradley* (by *Blaine E. Capehart*).

A petition was filed in the above entitled matter claiming compensation under and by virtue of the terms and provisions of Revised Statutes of New Jersey, 1937, Title 34, chapter 15; *N. J. S. A.* 34:15-1, *et seq.* An answer thereto was duly filed by the respondent. The matter came on for hearing before me, a Deputy Commissioner of Compensation, at the Workmen's Compensation Bureau, Court House Annex, Camden, New Jersey.

It is alleged in the petition that petitioner, on March 26th, 1943, during the course of his employment with respondent, was struck in the chest by a lever attached to an ash pit door, receiving injuries resulting in the disability for which compensation is sought. The petitioner also seeks to charge respondent for the cost of certain medical and surgical treatment which he alleges to have been necessary and which respondent failed to render. The answer denies the occurrence of a compensable accident as well as notice of any injury.

Without going into detail as to the occurrence of an accident, I find from the testimony produced that the petitioner sustained an accident arising out of, during and in the course of his employment with the respondent, as alleged, on March 29th, 1943, resulting in injuries of which respondent had due notice. The petition may be amended to allege the true date of the occurrence of said accident.

Following the accident, the petitioner complained of pains in the chest, shortness of breath and coughing spells with occasional spitting of blood. He was treated at the dispensary of respondent, and the physician in charge stated that from the history given, his complaints of pains were in the region of his liver, and made a diagnosis of a possible contusion of the liver. On April 5th, 1943, respondent hospitalized the petitioner for six days. The diagnosis upon admission was fractured rib, but a revised diagnosis after X-rays appeared negative of fracture, was contusion of chest.

It is significant to note that the hospital record offered in evidence, shows the complaint to be "pain in the chest." The condition of petitioner not improving, he was readmitted to the hospital on May 26th, 1943, where he remained until June 11th, 1943. The hospital record shows the admitting diagnosis to be acute empyema, and the revised diagnosis to be congestion of lower lobe (right). It also appears from the hospital record that X-rays taken on May 27th, 1943, showed an area of opacity in the region of the right lower and middle lobes, not dense enough to obscure the ribs and that pleural exudate seemed suggested, but it might be inflamation; and that X-rays taken on June 7th, 1943, showed much the same as the prior X-rays, and that the opacity was not diminished. The petitioner testified that following his discharge, his condition became worse, in that he suffered more pain, coughed more frequently, raising bloody sputum, and became very short of breath. On September 6th, 1943, he was again admitted to the Cooper Hospital and discharged on November 8th, 1943. The hospital record during this period discloses that the admitting diagnosis was lobar pneumonia, and the revised diagnosis was tumor of the right lung; that X-rays showed the opacity more discrete and circumscribed; that he was sent by the Cooper Hospital to Jefferson Hospital for a bronchoscopic examination on September 18th, 1943, and that the findings were inconclusive, but suggestive of a tumor. Following his discharge, petitioner visited the plant dispensary several times and was advised on November 14th, 1943, that he was able to return to work.

Petitioner testified that he sought no further medical treatment, but he did not again work until April 4th, 1944, when he obtained employment operating an elevator for the Army Air Forces and worked from eight to sixteen hours per day, six days a week, until late in December, 1944, when he again developed a terrible cough with bloody sputum; and that he sent for Dr. John C. Jones, his family physician. Dr. Jones testified that he was called to petitioner's home about January 13th, 1945, and found petitioner in a weak condition with breathing difficult; that he called daily and noticed his sputum had a peculiar aromatic odor; that on January 28th,

1945, he caused the petitioner to be admitted to Cooper Hospital and even though the petitioner was being treated by hospital staff, he visited him weekly, and after several chest taps had been made, concluded that the petitioner was suffering from an abscess of the lung. The doctor further stated that at the time of admission there was a doubt that the petitioner was suffering from pneumonia. The records of the hospital disclose the petitioner was admitted through the accident ward and was transferred by the hospital staff to Jefferson Hospital on April 27th, 1945.

It appears from the testimony of Dr. James M. Server that he examined petitioner upon his admittance to the surgical service of the Jefferson Hospital, and after X-rays were taken, made a diagnosis of lung abscess; that on May 2d, 1945, he performed the first stage operation and found evidence of an abscess of the lungs, in the right middle and lower lobes, as indicated by the X-rays; that he performed the second stage operation on May 14th, 1945, at which time four inches of the third and fourth ribs were removed; and that in September, 1945, he performed the third operation to close the hole through which the abscess was drained. It was his opinion that in view of the history of plumonary symptoms dating from the accident, that the contusion to the chest wall was of sufficient severity to lead to the lung abscess. It was also his opinion that the petitioner would be unable to return to work for four or five months from November 16th, 1945.

The respondent seriously contests the causal relationship of the injury to the lung abscess. But does an analysis of the testimony of Dr. Shafer support such contention? On cross-examination, Dr. Shafer admitted that, knowing the medical history subsequent to petitioner's discharge from the Cooper Hospital on November 8th, 1943, he believes the petitioner may have had some chest condition at the time he gave petitioner a pre-employment examination, and further that he believed the abscess was developing in 1943, and if so, trauma would be detrimental and hasten the process.

In proving causal relationship, absolute medical certainty is not demanded. All that is required is that the claimed conclusion be a more probable hypothesis from the facts pre-

sented; *Jackson* v. *Delaware, Lackawanna and Western Railroad,* 111 *N. J. L.* 487; 170 *Atl. Rep.* 22; *Hercules Powder Co.* v. *Nieratko,* 113 *N. J. L.* 195; 173 *Atl. Rep.* 606; *affirmed,* 114 *N. J. L.* 254; 176 *Atl. Rep.* 198; *Belyus* v. *Wilkinson, Gaddis & Co.,* 115 *N. J. L.* 43; 178 *Atl. Rep.* 181; *affirmed,* 116 *N. J. L.* 92; 182 *Atl. Rep.* 873. And in establishing causal relationship, it is not necessary that the accident be shown to be the sole contributing cause; *Furferi* v. *Pennsylvania Railroad,* 117 *N. J. L.* 508; 189 *Atl. Rep.* 126. It is sufficient when the proof shows that the employment was one of the contributing causes without which the accident would not have happened, and that the accident was one of the contributing causes without which the injury would not have resulted; *Ciocca* v. *National Sugar Refinery Co.,* 124 *N. J. L.* 329; 12 *Atl. Rep.* (*2d*) 130; *Cavanaugh* v. *Murphy Varnish Co.,* 130 *N. J. L.* 107; 31 *Atl. Rep.* (*2d*) 759; *affirmed,* 131 *N. J. L.* 163; 35 *Atl. Rep.* (*2d*) 896.

It is my conclusion and I find the more probable hypothesis to be that the injuries suffered by the petitioner in the accident so sustained by him on March 29th, 1943, were a competent producing cause of and contributing factor in the development of the abscess of the right lung with which the petitioner was suffering and for which he underwent surgical intervention.

The respondent furnished all medical treatment up to November 14th, 1943, including the three hospitalizations prior thereto. The petitioner seeks to charge the respondent with the cost of the subsequent medical treatment. Is the respondent liable therefor? The pertinent statute, *R. S.* 34:15–15; *N. J. S. A.* 34:15–15, provides that "the employer shall not be liable for any amount expended by the employee * * * for any such physicians' treatment and hospital services, unless such employee * * * shall have requested the employer to furnish the same and the employer shall have refused or neglected so to do, or unless the nature of the injury required such services, and the employer or his superintendent or foreman, having knowledge of such injury shall have neglected to provide the same, * * * or unless the circumstances are so peculiar as shall justify in the opinion

of the Workmen's Compensation Bureau, the expenditure assumed by the employee for such physicians' treatment or hospital services * * *."

In *Bobertz* v. *Hillside Township,* 126 *N. J. L.* 416; 19 *Atl. Rep.* (*2d*) 801, wherein medical expense had been incurred without requesting same of the respondent, it was held that the respondent by denying both the occurrence of an accident and causal relationship by implication disavowed responsibility for medical care even if notice had been given, and that the medical expense was properly chargeable against the respondent.

In *Kardos* v. *American Smelting Co.,* 132 *N. J. L.* 579; 39 *Atl. Rep.* (*2d*) 509, the petitioner, a furnace man's helper, contracted a bad cold and visited the plant doctor: a few days later he developed pneumonia and the plant doctor was summoned to his home, but upon arrival found petitioner's own physician in attendance; three months later petitioner was hospitalized for bilateral tuberculous pleurisy, acute tonsilitis and catarrhal conjunctivitis, and expenses for which hospitalization was sought from the respondent. The court, in refusing to charge respondent with the same, stated that while it might be inferred that the company doctor knew of the pneumonia, his services were obviously not desired when he called at petitioner's home; and that no notice had been given or knowledge had that hospitalization was necessary or proposed, as the condition with which petitioner was suffering when the company doctor called, was not such as to carry notice or knowledge of any of the ailments suffered by the petitioner three months later, for the treatment of which he was hospitalized.

In the instant case, notwithstanding the general denial of accident notice, causal relationship, and disability due to accidental causes, it was stipulated that respondent had paid compensation for temporary disability from April 1st, 1943, to November 14th, 1943, as well as hospital bills of $568.25 for the three periods above mentioned. There is no evidence that petitioner requested any further medical treatment of the respondent after November, 1943. However, it does appear that while petitioner was confined to the Cooper Hospital

during the period beginning in January, 1945, he having been admitted through the accident ward with the record disclosing no committing physician, he was visited by Dr. Shafer, the respondent's physician, upon whose direction and under whose care he had been previously hospitalized, who talked with hospital physicians attending him, examined the hospital charts and made notes of petitioner's condition and treatment. Even though these visitations by the doctor may have been made, as stated by him, in the course of his private practice, it cannot be denied that the information obtained from the patient's hospital chart constituted knowledge of the condition of and treatment to the petitioner. Knowledge by a plant physician is knowledge by the respondent, *General Cable Co. v. Levins,* 124 *N. J. L.* 223; 11 *Atl. Rep. (2d)* 61.

When the various diagnoses of the ailment with which the petitioner was suffering while he was being treated by the respondent, namely; possible contusion of the liver; fractured rib; chest contusion; acute empyema; congestion of right lower lobe, made after X-rays of May 27th, 1943, disclosing a rather circumscribed area of opacity of the right lower and middle lobes with pleural exudate suggested and X-rays of June 7th, 1943 appearing much the same with the opacity not diminished; lobar pneumonia; and tumor of the right lung, made after bronchoscopic examination on September 18th, 1943, suggestive of tumor and X-rays showing opacity more discrete and circumscribed; are considered, together with knowledge of the treating physician as to the nature of the accident and the complaints of the petitioner while under his care, and his knowledge of the condition of and treatment to the petitioner obtained from the hospital chart in January, 1945, it would seem as if the respondent was in possession of all the facts concerning the case. Nowhere has it even been suggested that the operation was not necessary, and yet the respondent, being cognizant of all the above facts and having the opportunity when its physician visited the petitioner in the hospital in January, 1945, failed to provide any treatment, although obviously necessary. The testimony of the operating surgeon that the removal of the lung abscess has reduced materially the probable permanent

disability resulting from the injury, strengthens my opinion that the circumstances of this case are so peculiar as to justify the expense of such treatment and the charging of the same against the respondent. Upon reflection, it would seem as if the legislature envisioned just such circumstances when the above quoted provision was enacted.

The petitioner seeks compensation for temporary disability from November 14th, 1943, to the present time and cites *International Motors* v. *Purcell*, 91 *N. J. L.* 707; 103 *Atl. Rep.* 860, in support of his contention. But a review of that case leads me to the conclusion that the principle stated therein is not applicable under the facts presented in this case. In addition to the compensation for temporary disability paid in accordance with the stipulation, I find that the petitioner is entitled to receive compensation for temporary disability from January 13th, 1945, to the present time and that such period of temporary disability has not yet ended, since the operating surgeon stated that it would continue for four or five months from November 16th, 1945, the date of the taking of his depositions, and that such temporary disability shall continue after the date hereof until such time, within the statutory limitations, as it may hereafter be determined to have ended, upon application of either party to terminate the same and fix the extent of permanent disability, if any, resulting from said injury.

It is, therefore, * * * ordered that judgment be entered in favor of the petitioner and against the respondent.

\* \* \* \* \* \* \*

R. WAYNE KRAFT,
*Deputy Commissioner.*